UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES of AMERICA, *et al.*, *ex rel.* MICHAEL BAWDUNIAK,<br><br>Plaintiff–Relator,<br><br>v.<br><br>BIOGEN IDEC INC.,<br><br>Defendant | Civil Action No. 12-10601-IT |

**UNITED STATES' STATEMENT OF INTEREST REGARDING RELATOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to 29 U.S.C. § 517, the United States respectfully submits this Statement of Interest concerning Relator's Motion for Partial Summary Judgment (Dkt. No. 477) (hereinafter "Relator's MPSJ") and Defendant Biogen Idec Inc.'s ("Biogen") Opposition (Dkt. No. 488) (hereinafter "Biogen's Opp."). The United States has an interest in this False Claims Act ("FCA") action, even though it has not intervened, because it is the real party in interest and is entitled to the majority of any recovery Relator may obtain on the government's behalf. 31 U.S.C. § 3730(d); *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 934-35 (2009). The United States also has an interest in the development of law in this area, since the FCA is the United States' primary civil tool for protecting the public *fisc* from fraud.

Specifically, the United States respectfully submits two observations for the Court's consideration as it takes Relator's MPSJ under advisement: First, violations of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b), are *per se* material to federal healthcare claims under the FCA. Second, the 2021 changes to the AKS safe harbor regulations are not retroactive.

1

I.      **AKS Violations are *per se* Material Under the FCA**

Violations of the AKS are *per se* material to federal healthcare claims under the FCA. Since March 23, 2010, the AKS explicitly states, "a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the FCA.]" 42 U.S.C. § 1320a-7b(g). As the First Circuit has held, this statutory provision "obviate[es] the need for a plaintiff to plead materiality -- that is, to plead that compliance with the AKS was material to the government's decision to pay any specific claim." *Guilfoile v. Shields*, 913 F.3d 178, 190 (1st Cir. 2019). The First Circuit reasoned that "[t]he statute's use of the term 'constitutes' would be meaningless if courts had to engage in a materiality analysis . . . after establishing that a claim resulted from an AKS violation." *Id.* (quotation marks in original).

*Guilfoile*'s holding was not limited to the pleading stage. *Cf.* ECF No. 488 at 36. Although the First Circuit repeatedly references the relator's pleading burden relative to materiality, that was for one simple reason: *Guilfoile* was decided on the pleadings. 913 F.3d at 185-87. The First Circuit strongly suggested that the same standard would apply at summary judgment and trial: "If a plaintiff must plead and prove that compliance with the AKS was "material" to a claim "resulting from" an AKS violation, § 1320a-7b(g) would not represent the strengthening of whistleblower actions that Congress intended. Moreover, § 1320a-7b(g)'s obviation of the 'materiality' inquiry essentially codifies the long-standing view that AKS violations are 'material' in the FCA context." *Id.* at 190-91 (quotation marks in original). Indeed, *Guilfoile*'s reach was something that this Court recognized earlier in these proceedings. *See* Transcript on Motion to Quash Subpoenas to the Government, ECF No. 242 at 18 (quoting "plead and prove" language repeated above).

Numerous other courts, like the First Circuit, have held that AKS is *per se* material. *See, e.g.*, *United States ex rel. Heller v. Guardian Pharmacy, LLC*, 521 F. Supp. 3d 1254, 1279 (N.D. Ga. 2021) ("[T]he Court agrees with the position taken by the majority of courts to reach the issue and finds that [relator] need not allege further facts to establish materiality beyond a facially plausible violation of the AKS."); *United States ex rel. Goodman v. Arriva Med., LLC*, 471 F. Supp. 3d 830, 842 (M.D. Tenn. 2020) (A "'false or fraudulent claim' is a term of art that now categorically includes claims resulting from an AKS violation, regardless of materiality to any payment decision. It would be nonsensical to say that an AKS violation is nevertheless somehow not 'material' to a false or fraudulent claim; one would be saying that an AKS violation is not material to itself.") (quotation marks in original); *United States ex rel. Fesenmaier v. The Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003 (WMW/DTS), 2021 U.S. Dist. LEXIS 5684, at *30, n.5 (D. Minn. Jan. 12, 2021) ("Multiple courts have persuasively concluded that an AKS violation, at least with respect to claims submitted after the 2010 amendments to the AKS, is *per se* materially false for purposes of an FCA claim.").

Moreover, this is true even with respect to claims submitted prior to when Congress last amended the AKS on March 23, 2010. As the First Circuit explained, the AKS amendment that defined a "false or fraudulent claim" to include claims tainted from "a violation of this section" did not create a new rule, but rather "essentially codifie[d] the long-standing view that AKS violations are 'material' in the FCA context." *Guilfoile*, 913 F.3d 190. This view is the logical result of applying the standard for materiality under the FCA, where the "fundamental inquiry is whether a piece of information is sufficiently important to influence the behavior of the recipient." *United States ex rel. Escobar v. Universal Health Servs.*, 842 F.3d 103, 110 (1st Cir. 2016) (internal quotation marks in original). To make this inquiry, the Supreme Court identified

3

in *Escobar* several non-exhaustive factors to be considered: (1) the Government's decision to expressly identify a provision as a condition of payment," 579 U.S. at 194, (2) whether the violation goes to the "essence of the bargain," *id.* at 193 n.5, or is "minor or insubstantial," *id.* at 194, and (3) what actions the Government took in this case or other cases where the Government had "actual knowledge" of similar violations, *id.* at 195. Each of these factors demonstrates the *per se* materiality of AKS compliance.

First, courts have long held that compliance with the AKS is a condition of payment. *United States ex rel. Hutcheson v. Blackstone Med.*, Inc., 647 F.3d 377, 395 (1st Cir. 2011) ("If kickbacks affected the transaction underlying a claim . . . the claim failed to meet a condition of payment.); *United States ex rel. Kester v. Novartis Pharm. Corp.*, 41 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (collecting cases). Second, a "violation of the AKS is a far cry from an 'insubstantial' regulatory violation" and is instead "a felony offense punishable by up to five years in prison." *United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 818 (S.D.N.Y. 2017). The government also does not "get what it bargained for when a defendant is paid by [the government] for services tainted by a kickback." *United States ex rel. Gohil v. Sanofi U.S. Servs.*, No. 02-2964, 2020 U.S. Dist. LEXIS 131083, at *36 (E.D. Pa. July 21, 2020) (*quoting United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 314 (3d Cir. 2011)). Third, the government regularly takes action to enforce the AKS, including by pursing "FCA actions and criminal proceedings to deter and punish AKS violations and recoup funds." *Wood*, 246 F. Supp. 3d at 818; *United States ex rel. Lutz v. Berkeley Heartlab, Inc.*, Civil Action No. 9:14-230-RMG, 2017 U.S. Dist. LEXIS 198727, at *8 (D.S.C. Dec. 4, 2017) (collecting cases). Given these factors, there is "no trouble concluding that compliance with the AKS is a 'material' condition of payment." *Lutz*, 2017 U.S. Dist. LEXIS 198727, at *6.

This conclusion is not altered by the fact the government neither denied any of the claims at issue nor intervened in this *qui tam* action. Even if AKS violations were not *per se* material, the government's decision to deny (or pay) claims would be relevant to the materiality analysis only where it has "actual knowledge" of the violation when payment is made. *Escobar*, 579 U.S. at 195; *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822, 834 (6th Cir. 2018) ("Without actual knowledge of the alleged non-compliance, the government's response to the claims submitted by the defendants—or claims of the same type . . . —has no bearing on the materiality analysis."). Here, the government could not have had "actual knowledge" since it paid the last claim at issue in 2014 and, as of July 2015, it had not even completed its investigation of the allegations in this case. *See* United States' Notice of Election to Decline Intervention and Notice of Non-Intervention at This Time, July 1, 2015 (Dkt. No. 68) (notifying the Court that the United States had not concluded its investigation into Relator's claims). Thus, at most, the government had "awareness of allegations concerning non-compliance," which the First Circuit explained was "different from knowledge of actual non-compliance." *Escobar*, 842 F.3d at 112. Indeed, Biogen has and continues to deny it violated the AKS. *See* Biogen's Opp. at 7-33.

Nor does the government's decision not to intervene suggest a lack of materiality. Even had the government declined (rather than filing a notice of non-intervention), it is well settled that such an act does not speak to the merits of the underlying *qui tam* action. *United States ex rel. Janssen v. Lawrence Mem'l Hosp.*, 949 F.3d 533, 542 n.12 (10th Cir. 2020) ("[W]e put little weight on the fact that the DOJ was aware of the allegations and declined intervention. To infer much, if anything, from such a declination would undermine the purposes of the FCA, which is explicitly designed to permit private persons to litigate suits in lieu of the Government."); *United*

*States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006). Moreover, "assuming the government looked unfavorably upon each *qui tam* action in which it did not intervene," would be "antithetical to [the text and] purpose of the qui tam provision[,]" which authorizes relators to litigate on behalf of the United States after declination. *United States ex rel. El-Amin v. George Washington University*, 533 F. Supp. 2d 12, 21-22 (D.D.C. 2008) ("[T]he simple fact that the government did not intervene has no probative value and is not relevant"). Finally, it is worth noting that *Escobar* was itself a declined case. 579 U.S. at 185. Despite that fact, the Supreme Court did not mention the declination decision as a factor in its materiality analysis. *Id.* at 193-96. Nor did the First Circuit on remand. *Escobar*, 842 F.3d at 112. Thus, the government's decision not to intervene is not evidence the alleged violation was not material. *Prather*, 892 F.3d at 836 ("If relators' ability to plead sufficiently the element of materiality were stymied by the government's choice not to intervene, this would undermine the purposes of the [FCA].").

**II.     2021 Changes to AKS Safe Harbors Are Not Retroactive**

With an *express* effective date of January 19, 2021, the safe harbor for Personal Services and Management Contracts replaced the requirement that "aggregate compensation" for such contracts be set in advance with the requirement that "[t]he methodology for determining the compensation paid to the agent over the term of the agreement is set in advance." 42 C.F.R. § 1001.952(d)(1)(iv)(2021); 85 FR 77684, 77895 ("These regulations are effective January 19, 2021."). This change is not retroactive. "[A]dministrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Nothing in changing how compensation must be set in advance to qualify for safe harbor protection requires retroactive effect. As the rule explains, the change

6

was intended to "modify the existing safe harbor," 85 FR 77684 at 77686, in order to "provide enhanced flexibility to the health care industry," *id.* at 77839, which speaks to prospective effect. Congruently, the proposed rule noted, "any final safe harbors would provide only *prospective* protection." Revisions To Safe Harbors Under the Anti-Kickback Statute, and Civil Monetary Penalty Rules Regarding Beneficiary Inducements: Proposed Rule, 84 FR 55694 at 55696 (October 17, 2019) (emphasis added). Indeed, the final rule expressly rejected a request to have one of its safe harbors apply retroactively, cautioning "[i]t is neither feasible nor desirable to confer safe harbor protection retrospectively under a criminal statute." 85 FR 77684 at 77694. Thus, Biogen's "[c]onduct is evaluated under the statute and regulations in place at the time of the conduct." *Id.*

*   *   *

The United States respectfully requests that the Court consider these views as it takes Relator's MPSJ under advisement.

Dated: February 8, 2022

RACHAEL S. ROLLINS
United States Attorney

/s/ Evan D. Panich
EVAN D. PANICH
Assistant United States Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
evan.panich@usdoj.gov