UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

UNITED STATES OF AMERICA, *et al.*, *ex rel.*
MICHAEL BAWDUNIAK,

                                        Plaintiff-Relator,

                    vs.

BIOGEN IDEC INC.,

                                        Defendant.

Civil Action No. 12-10601-IT

---

### BIOGEN'S PROPOSED INSTRUCTIONS TO THE JURY

Pursuant to this Court's Individual Rules and Practices in Civil Cases and this Court's April 20, 2022 Order (ECF No. 548), Defendant Biogen Inc. ("Biogen") respectfully submits the following proposed Jury Instructions for the Court's consideration and adoption. Biogen respectfully requests the opportunity to revise these instructions before they are submitted to the jury based on how the Court rules on the parties' motions and how the parties present their cases.

### Defendant Biogen Inc.'s Request to Charge

I.     Instructions To Be Given Before the Introduction of Evidence ............................5

       Jury Instruction 1:     Explanation of Terms...........................................................6

       Jury Instruction 2:     Juror Conduct....................................................................9

       Jury Instruction 3:     Notetaking is Permitted.....................................................11

       Jury Instruction 4:     Introduction to the Case ...................................................12

       Jury Instruction 5:     Burden of Proof – Preponderance of the Evidence...........15

       Jury Instruction 6:     Evidence............................................................................17

       Jury Instruction 7:     Direct and Circumstantial Evidence ..................................19

       Jury Instruction 8:     Credibility of Witnesses....................................................20

       Jury Instruction 9:     Bias ....................................................................................22

       Jury Instruction 10:    Interest in Outcome...........................................................23

       Jury Instruction 11:    Discrepancy in Testimony .................................................24

       Jury Instruction 12:    Impeachment by Prior Inconsistent Statement .................25

       Jury Instruction 13:    Expert Witnesses...............................................................26

       Jury Instruction 14:    Conflicting Expert Testimony...........................................27

       Jury Instruction 15:    Corporations......................................................................28

       Jury Instruction 16:    False Claims Act Preliminary Instruction..........................29

       Jury Instruction 17:    Anti-Kickback Statute Preliminary Instruction ................30

       Jury Instruction 18:    Speaker Programs and Consultant Programs Are
                               Lawful ...............................................................................31

       Jury Instruction 19:    Preliminary Instruction on the Relationship
                               Between the Anti-Kickback Statute and the False
                               Claims Act .........................................................................32

       Jury Instruction 20:    Overview of the Trial Process............................................33

II.    Instructions to be Given After the Introduction of Particular Evidence During
       Trial....................................................................................................................34

       Jury Instruction 1:     Rule 1006 Summaries........................................................35

       Jury Instruction 2:     Demonstrative Evidence ...................................................36

       Jury Instruction 3:     Use of Depositions............................................................37

       Jury Instruction 4:     Answers to Interrogatories.................................................38

       Jury Instruction 5:     Admissions in Response to Requests for Admission.........39

       Jury Instruction 6:     Stipulations .......................................................................40

III.   Pre-Deliberation Instructions and Governing Law .................................................41

       Jury Instruction 1:     Role of Court.....................................................................42

Jury Instruction 2:    Role of Jury ....................................................................43

Jury Instruction 3:    Nature of Relator's Claims ..............................................44

Jury Instruction 4:    The False Claims Act and the Anti-Kickback
Statute ............................................................................47

Jury Instruction 5:    Elements of the Anti-Kickback Statute.............................48

Jury Instruction 6:    AKS First Element — Definition of Remuneration ..........49

Jury Instruction 7:    AKS First Element – Remuneration Benchmark
Required...........................................................................50

Jury Instruction 8:    AKS Second Element — Purpose of Remuneration..........51

Jury Instruction 9:

    AKS Second Element — Meaning of "To Induce" ...........52

Jury Instruction 10:   AKS Second Element — *Quid Pro Quo*...........................54

Jury Instruction 11:   AKS Second Element — Distinguishing Between
an Intent to Induce Prescriptions and an Intent to
Increase Prescriptions through Educational or
Promotional Messaging ...................................................56

Jury Instruction 12:   AKS Third Element — Coverage by Health Care
Program ..........................................................................57

Jury Instruction 13:   AKS Fourth Element — Acting Knowingly and
Willfully ...........................................................................58

Jury Instruction 14:   AKS Fourth Element — Good Faith ................................60

Jury Instruction 15:   AKS Fourth Element — Collective Knowledge
Insufficient ......................................................................61

Jury Instruction 16:   FCA's Relation to the AKS ............................................62

Jury Instruction 17:   FCA Essential Elements of Section 3729(a)(1)(A) ...........63

Jury Instruction 18:   Definition of "Claim" ......................................................65

Jury Instruction 19:   FCA First Element — Only Claims "Resulting
From" an AKS Violation Are False Claims ....................66

Jury Instruction 20:   FCA First Element – False Certification .........................68

Jury Instruction 21:   FCA Second Element — Proximate Causation ................69

Jury Instruction 22:   FCA Third Element — Knowledge Standard
Overview..........................................................................71

Jury Instruction 23:   FCA Third Element — Definition of "Actual
Knowledge" ......................................................................72

Jury Instruction 24:   FCA Third Element — Definition of "Deliberate
Ignorance" and "Reckless Disregard" .............................73

Jury Instruction 25:   FCA Third Element — Reliance on Compliance
Program; Mistake or Negligence Not Sufficient ..............74

Jury Instruction 26:    FCA Third Element — Collective Knowledge Insufficient ..................................................................75

Jury Instruction 27:    FCA Fourth Element — Materiality ..................................76

Jury Instruction 28:    FCA Fourth Element — Effect of Government Knowledge on Materiality ...............................77

Jury Instruction 29:    FCA Fifth Element – Proof of Damages Required............78

Jury Instruction 30:    Consider Damages Only if Necessary ..............................79

Jury Instruction 31:    Damages Causation........................................................80

Jury Instruction 32:    Burden for Proof of Damages ............................................82

Jury Instruction 33:    Reasonable Certainty Required........................................83

Jury Instruction 34:    Measure of Damages........................................................84

Jury Instruction 35:    Number of FCA Violations.................................................85

Jury Instruction 36:    State False Claims Act Claims..........................................86

IV.    Jury Deliberations ...........................................................................89

Jury Instruction 1:    Selection of Foreperson ....................................................90

Jury Instruction 2:    Duty of Juror......................................................................91

Jury Instruction 3:    Juror Oath..........................................................................92

Jury Instruction 4:    Jury Duty to Disregard the Court's View .........................93

Jury Instruction 5:    Right To See Exhibits and Hear Testimony; Communications with Court ...............................95

Jury Instruction 6:    Duty to Deliberate/Unanimous Verdict ............................96

Jury Instruction 7:    Special Verdict Form and Interrogatories.........................97

Jury Instruction 8:    Return of Verdict Form.....................................................98

**I.**      **<u>Instructions To Be Given Before the Introduction of Evidence</u>**

**Jury Instruction 1:          Explanation of Terms**

We are about to begin the trial of the case you heard about during jury selection. Before the trial begins, I am going to give you instructions that will help you understand what will be presented to you and how you should conduct yourself during the trial.

During the trial, you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common terms to you. The party who brings a lawsuit is called the Plaintiff. In this action, the Plaintiff is Michael Bawduniak. Mr. Bawduniak will be referred to as the "Relator" during this trial. I will explain to you the role of the Relator in greater detail momentarily. In these instructions, when I use the term Relator, I will be referring to the sole Plaintiff in this action, Mr. Bawduniak.

The party being sued is called the Defendant. In this action, the Defendant is Biogen Inc., formerly named Biogen Idec Inc., whom I will refer to in these instructions as "Biogen."

You will sometimes hear me refer to "Counsel." "Counsel" is another way of saying "lawyer" or "attorney." I will sometimes refer to myself as the "Court."

When I say "admitted into evidence" or "received into evidence," it means that this particular statement or the particular exhibit may be considered by you in making the decisions you must make at the end of the case.

By your verdict, you will decide disputed issues of fact. I will decide all questions of law that arise during the trial. Before you begin your deliberation at the

close of the case, I will instruct you in more detail on the law that you must follow and apply.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented. During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers. It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible. When I "sustain" an objection, I am excluding that evidence from this trial for a good reason. When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.

You should not be biased or partial against a lawyer or the lawyer's client because the lawyer has made objections. If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inferences or conclusions from the question. You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case or the weight or effect of such evidence favoring one side or the other. I do not favor one side or the other. You are the sole judges of credibility of all witnesses and the weight and effect of all evidence.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure. Counsel also has the right and duty to ask the court to make such rulings of law at the side bar out of the hearing of the jury so

sometimes you may be excused from the courtroom during these discussions. I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly. You should not show any prejudice against an attorney or his or her client because an attorney asks for a conference out of the hearing of the jury or asks the court for a ruling on the law.

Sources:    Adapted from 3 Kevin F. O'Malley et al., <u>Federal Jury Practice and Instructions</u> § 101:01 (6th ed. updated Jan. 2022); 4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶ 71.01, Instruction 71-6 (2022).

**Jury Instruction 2:        Juror Conduct**

Before we start the trial, let me give you a few "rules of the road."

First, please do not discuss the case with anyone.  This includes discussing the case in person, in writing, by phone or electronic means, via text messaging, e-mail, Facebook, Twitter, blogging or any Internet chat room, web site or other feature.  If you have to tell someone such as your spouse or your employer that you are serving on a jury and that the trial may last as late as [date], that's okay.  But when they inevitably ask you what the case is about, please tell them that you are under strict instructions from the judge not to discuss the case.  The reason for this, obviously, is that we want you to decide this case solely on the evidence presented in this courtroom, and not on the basis of anything anyone who hasn't heard the evidence may think about the case.  If you are asked or approached in any way about your jury service or anything about this case, you should respond that you have been ordered by the judge not to discuss the matter, and you should report the contact to the court as soon as possible.

Along the same lines, you should not try to access any information about the case or do research on any issue that arises in the case from any outside source, including dictionaries, reference books, or anything on the Internet.  And in the unlikely event you see anything in the media about this case, please turn away and pay it no heed.  Your sworn duty is to decide this case solely and wholly on the evidence presented in this courtroom.

During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case—you should not even pass the time of day with any of them.  The lawyers are not allowed to speak with you during this case.  When

9

you see the lawyers at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law. It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

Finally, please do not discuss the case even among yourselves until all the evidence has been presented and the case has been given to you for your deliberations. The reason for this is that the evidence will be presented one witness and one exhibit at a time, and it is important that you keep an open mind until you have heard all the evidence.

Sources:     Adapted from 4 Leonard B. Sand et al., Modern Federal Jury Instructions—Civil ¶ 71.02, Instruction 71-15 (2022); 3 Kevin F. O'Malley et al., Federal Jury Practice and Instructions § 101:01 (6th ed. updated Jan. 2022).

**Jury Instruction 3:      Notetaking is Permitted**

If you want to take notes during the course of the trial, you may do so. If you do take notes, be sure that your note-taking does not interfere with your listening to and considering all of the evidence. Also, if you take notes, do not discuss them with anyone before or during your deliberations. Your notes are to be used solely to assist you and are not to substitute for your recollection of the evidence in the case. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror and your notes are not to be shown to any other juror during your deliberations. If, during your deliberations, you have any doubt as to any of the testimony, you will be permitted to request that the official trial transcript which is being made of these proceedings be read to you.

Source:      4 Leonard B. Sand et al., Modern Federal Jury Instructions—Civil
             ¶ 71.02, Instruction 71-16 (2022).

**Jury Instruction 4:        Introduction to the Case**

To help you follow the evidence, I will give you a brief summary of the parties, their positions and the claims at issue.

This is a civil case.  The defendant in this case, "Biogen," is a pharmaceutical company that specializes in therapies that treat neurological diseases, including multiple sclerosis, which I will refer to as "MS."  Biogen manufactures and markets three medications that are prescribed to treat MS:  Avonex, Tysabri and Tecfidera.  Whenever I refer to the Biogen MS medications or drugs, I am referring to these three medications.

The plaintiff in this case is Michael Bawduniak, a former Biogen employee.  Mr. Bawduniak alleges that Biogen violated federal laws called the Anti-Kickback Statute and the False Claims Act, as well as similar State laws.  I will refer to Mr. Bawduniak as the "Relator."  That is because the False Claims Act has a whistleblower provision that allows a private person, called a Relator, who says he has evidence of an alleged fraud on the United States Government, to pursue a lawsuit on behalf of the United States Government.  A number of States have their own False Claims Acts with similar whistleblower provisions.  The False Claims Act laws allow the Relator to obtain a portion—between 25 and 30 percent—of any monies recovered in this lawsuit.

The Relator alleges in this lawsuit that Biogen caused Government Health Insurance Programs, including Medicare and Medicaid, to pay fraudulent reimbursement claims for prescriptions for Biogen's MS medications.  These insurance programs, which I am going to call collectively the "Government Health Insurance Programs," are

federally funded programs.  The States contribute some of the funding for the Medicaid program, which they also administer.

The Relator alleges that between January 2009 and March 2014, Biogen paid illegal kickbacks to healthcare providers in order to get them to prescribe Biogen's MS medications.  When I refer to "healthcare providers" in these instructions, I am referring to doctors and others, such as physician assistants, who are able to prescribe prescription medications.  Relator alleges that the healthcare providers who received these illegal kickbacks then wrote prescriptions for Biogen's MS medications, which the Government Health Insurance Programs ultimately paid for.  Relator alleges that Biogen used certain events called "speaker programs" and "consultant meetings" as a way to pay illegal kickbacks to doctors.  According to Relator, certain fees that Biogen paid to doctors to speak or train to speak about Biogen's MS medications at speaker programs, and the fees Biogen paid doctors to provide feedback in consultant meetings, were kickbacks intended to induce prescriptions.  The Relator also alleges that certain meals provided to healthcare providers who attended speaker programs and consultant meetings were kickbacks intended to induce prescriptions.

Biogen denies all these allegations and denies that it violated the Anti-Kickback Statue and False Claims Act.  Biogen contends that its speaker programs were legitimate and legal educational and promotional events held to provide information about the benefits, risks and appropriate uses of Biogen's medications to help healthcare providers treat patients with MS.  Biogen contends that its consultant meetings were legitimate and legal programs designed to allow Biogen to obtain important feedback from doctors concerning the marketplace, clinical practice and the needs of patients,

which Biogen used to develop better products and adapt its marketing strategies and promotional materials. Biogen contends that the fees paid to the doctors for providing feedback at consultant meetings and for being trained to speak or speaking at speaker programs were intended to compensate the doctors at fair and customary rates for their time and expertise. Biogen maintains that meals provided at these programs were not intended to induce prescribing behavior, but instead were intended to encourage attendance at the programs by feeding healthcare providers who attended programs after business hours. Biogen further contends that healthcare providers prescribed medications in the best interests of their patients and not because of fees or meals.

Source:     Adapted from 3 Kevin F. O'Malley et al., <u>Federal Jury Practice and Instructions</u> § 101:01 (6th ed. updated Jan. 2022).

**Jury Instruction 5:          Burden of Proof – Preponderance of the Evidence**

Relator has the burden of proving the material allegations of his complaint to you by a preponderance of the evidence.  If, after considering all of the testimony you will hear, you are satisfied that the Relator has carried his burden on each essential point as to which he has the burden of proof, then you must find for the Relator on his claims. If, after such consideration, you find the testimony of both parties to be in balance or equally probable, then the Relator has failed to sustain his burden and you must find for Biogen.

What does a "preponderance of evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them.

If you find that the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the Relator.  That is because the Relator must prove more than simple equality of evidence—he must prove the element at issue by a preponderance of the evidence.  On the other hand, the Relator need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in

favor of the Relator—that what the Relator claims is more likely true than not true—then

that element will have been proved by a preponderance of evidence.


<u>Sources</u>:        Adapted from 4 Leonard B. Sand et al., <u>Modern Federal Jury</u>
<u>Instructions—Civil</u> ¶ 73.01, Instructions 73-1, 73-2 (2022); 31 U.S.C.
§ 3731(d).

**Jury Instruction 6:        Evidence**

The evidence in this case you should consider is the sworn testimony of the witnesses, the exhibits received in evidence, stipulations, and judicially noticed facts.

By contrast, the questions of the lawyers are not to be considered by you as evidence.  It is the witnesses' answers that are evidence, not the questions.  At times, a lawyer might incorporate into a question a statement which assumes certain facts to be true, and ask the witness if the statement is true.  If the witness denies the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it is in the lawyer's question.

Testimony I may strike or exclude is not evidence and may not be considered by you in rendering your verdict.  Also, if certain testimony is received for a limited purpose—such as for the purpose of assessing a witness's credibility—you must follow the limiting instructions I give.

Arguments by lawyers are not evidence, because the lawyers are not witnesses.  What they say to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.

To constitute evidence which may be considered by you, exhibits must be received in evidence.  Exhibits that are marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may make concerning the quality of the evidence do not constitute evidence.

It is for you alone to decide the weight, if any, to be given to the testimony you hear and the exhibits you see.

<u>Source</u>:        Adapted from 4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶ 74.01, Instruction 74-1 (2022).

**Jury Instruction 7:        Direct and Circumstantial Evidence**

There are two types of evidence which you may properly use in reaching your verdict.

One type of evidence is direct evidence.  Direct evidence is when a witness testifies about something he knows by virtue of his own senses—something he has seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

The other type of evidence is circumstantial evidence.  This is evidence which tends to prove a disputed fact by proof of other facts.

Circumstantial evidence is of no less value than direct evidence; for, it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

Source:        Adapted from 4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶ 74.01, Instruction 74-2 (2022).

19

**Jury Instruction 8:    Credibility of Witnesses**

It is your job to decide how believable each witness is in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.  You should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testifies, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies?  You watch each witness testify.  Everything a witness says or does on the witness stand counts in your determination.  After hearing all the testimony you should ask yourself:  How did the witness impress you?  Did he or she appear to be frank, forthright, and candid, or evasive and edgy as if hiding something?  How did the witness appear; what was his or her demeanor—that is, his or her carriage, behavior, bearing, manner, and appearance while testifying?  Often it is not what a person says but how he or she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility the witness may show for or against any party as well as any interest the witness has in the outcome of the case.  You should consider the opportunity the witness has to see, hear, and know the things about which he or she testifies, the accuracy of the witness's memory, the witness's candor or lack of candor, the witness's intelligence, the reasonableness and probability of the witness's testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case.  Always remember that you should use your common sense, your good judgment, and your own life experience.

Source:       Adapted from 4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶ 76.01, Instruction 76-1 (2022).

**Jury Instruction 9:        Bias**

In deciding whether to believe a witness, you should specifically note any evidence of hostility or affection that the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if after hearing his or her testimony, you find that a witness is biased, you should view his or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Source:        Adapted from 4 Leonard B. Sand et al., Modern Federal Jury Instructions—Civil ¶ 76.01, Instruction 76-2 (2022).

**Jury Instruction 10:        Interest in Outcome**

In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of the case.  Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances his own interests.  Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.

Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved.  There are many people who, no matter what their interest in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest affected his testimony.

Source:        4 Leonard B. Sand et al., Modern Federal Jury Instructions—Civil
               ¶ 76.01, Instruction 76-3 (2022).

**Jury Instruction 11:        Discrepancy in Testimony**

You may hear evidence of discrepancies in the testimony of certain witnesses, and counsel may argue that such discrepancies are a reason for you to reject the testimony of those witnesses.

You are instructed that evidence of discrepancies may be a basis to disbelieve a witness's testimony.  On the other hand, discrepancies in a witness's testimony or between his or her testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict himself.  It is also a fact that two people witnessing an event will see or hear it differently.  Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance; but a willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of the witness, how to weigh the discrepancies in his or her testimony.  You should, as always, use common sense and your own good judgment.

Source:          Adapted from 4 Leonard B. Sand et al., Modern Federal Jury Instructions—Civil ¶ 76.01, Instruction 76-4 (2022).

**Jury Instruction 12:        Impeachment by Prior Inconsistent Statement**

You may hear evidence that at some earlier time the witness has said or done something that counsel argues is inconsistent with the witness's testimony at this trial.

Evidence of a prior inconsistent statement is not to be considered by you as affirmative evidence in determining liability.  Evidence of a prior inconsistent statement is to be used by you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself.  If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appealed to your common sense.

It is exclusively your duty, based on all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness's testimony.


Source:        Adapted from 4 Leonard B. Sand et al., Modern Federal Jury Instructions—Civil ¶ 76.01, Instruction 76-5 (2022).

**Jury Instruction 13:    Expert Witnesses**

In this case, I will permit certain witnesses to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.  Such testimony will be presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony.  You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept opinion testimony merely because I allow the witness to testify concerning his or her opinion.  Nor should you substitute it for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.

Sources:    Adapted from 4 Leonard B. Sand et al., Modern Federal Jury Instructions—Civil ¶ 76.01, Instruction 76-9 (2022).

**Jury Instruction 14:    Conflicting Expert Testimony**

You will hear testimony of witnesses who have been called by both sides to give their opinion as experts regarding various issues. The testimony of these witnesses may be in conflict. You must remember that you are the sole trier of the facts and their testimony relates to questions of fact, so, it is your job to resolve the disagreement.

The way that you resolve the conflict between these witnesses is the same way that you decide other fact questions and the same way you decide whether to believe ordinary witnesses. In addition, you should consider the soundness of each opinion, reasons for the opinion and the witness's motive, if any, for testifying.

You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in the light of all the evidence. You should not permit a witness's opinion testimony to be a substitute for your own reason, judgment and common sense.

You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness. The determination of the facts in this case rests solely with you.

Source:        Adapted from 4 Leonard B. Sand et al., Modern Federal Jury Instructions—Civil ¶ 76.01, Instruction 76-10 (2022).

**Jury Instruction 15:      Corporations**

In this case, Biogen is a corporation.  The mere fact that one of the parties is a corporation does not mean it is entitled to any lesser consideration by you.  All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party.

Source:      4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶ 72.01, Instruction 72-1 (2022).

**Jury Instruction 16:        False Claims Act Preliminary Instruction**

This is a federal False Claims Act case.  The False Claims Act prohibits the knowing submission of, or causing the submission of, materially false claims for payment to the United States Government.

Here, Relator does not allege that Biogen submitted false claims for payment to the United States Government.  Instead, Relator alleges that Biogen knowingly caused the submission of false claims for payment through violations of a separate federal law called the Anti-Kickback Statute, which I will discuss in a moment.

Under the False Claims Act, knowingly means acting with (a) actual knowledge of the true information, (b) deliberate ignorance of the truth or falsity of the information or (c) reckless disregard of the truth or falsity of the information.

Sources:        Adapted from 31 U.S.C. § 3729(a)(1).

**Jury Instruction 17:        Anti-Kickback Statute Preliminary Instruction**

In this case, Relator alleges that claims submitted for payment to the United States were false due to alleged violations of the Anti-Kickback Statute.  The Anti-Kickback Statute is a federal law that prohibits the knowing and willful payment of remuneration to induce a person to purchase or recommend purchasing or ordering any medication for which payment may be made in whole or in part under a federal healthcare program.

The term "remuneration" means the transfer of something of monetary value to the intended recipient for free or for other than fair market value.  Remuneration may be paid in cash or by giving property or services.  The focus is on whether it constitutes something of value to the intended recipient in whatever form paid.

The terms "knowing" and "willful" under the Anti-Kickback Statute mean to act voluntarily, intelligently, with a bad purpose to either disobey or disregard the law, and not because of ignorance or misunderstanding.

Sources:        Adapted from 42 U.S.C. § 1320a-7b(b)(2)(B); Substantive Jury Instructions at 4-7, United States v. Reichel, No. 1:15-cr-10324 (D. Mass. June 17, 2016), ECF No. 244 (Skaistis Decl,. Ex. 1, Doc. No. 580-1); OIG Compliance Program Guidance for Pharmaceutical Manufacturers, 68 Fed. Reg. 23731-01, 23737 (May 5, 2003) (Skaistis Decl,. Ex. 2, Doc. No. 580-2).

**Jury Instruction 18:    Speaker Programs and Consultant Programs Are Lawful**

The Anti-Kickback Statute does not prohibit a pharmaceutical company from paying healthcare providers to serve as speakers to promote the company's products or to serve as consultants to provide the company with feedback.  Moreover, the Anti-Kickback Statute does not prohibit healthcare providers from serving as paid speakers or paid consultants for pharmaceutical companies.  It also does not prohibit a pharmaceutical company from providing meals to healthcare providers in connection with speaking at or at attending a promotional program or consultant program.


Sources:        Adapted from United States ex rel. King v. Solvay Pharms., Inc., 871 F.3d 318, 332 (5th Cir. 2017); United States ex rel. Brown v. Celgene Corp., 226 F. Supp. 3d 1032, 1054–57 (C.D. Cal. 2016).

**Jury Instruction 19:      Preliminary Instruction on the Relationship
Between the Anti-Kickback Statute and the False Claims Act**

The Anti-Kickback Statute does not provide for a private right of action. In other words, a Plaintiff in a civil case may not bring a lawsuit claiming the Defendant violated the Anti-Kickback Statute alone.

Instead, a Plaintiff—like Relator—must prove both that the Defendant violated the Anti-Kickback Statute and that the Defendant's alleged violations of the Anti-Kickback Statute caused the submission of false claims for payment to the United States Government in violation of the False Claims Act.

Therefore, to prove his case, Relator must prove that Biogen violated the Anti-Kickback Statute and that Biogen's alleged violations caused healthcare providers to submit false claims for payment to the United States Government in violation of the False Claims Act.

Source:      Adapted from United States ex rel. King v. Solvay Pharms., Inc., 871 F.3d 318, 324 n.1, 331–32 (5th Cir. 2017).

**Jury Instruction 20:        Overview of the Trial Process**

Now let me just give you a brief overview of what will take place during the trial.  First, the lawyers for each side may make opening statements.  What is said in the opening statement is not evidence, but is simply an outline or summary to help you understand what each party expects the evidence to show.  A party is not required to make an opening statement.

After the opening statements, Relator's lawyers will present evidence in support of Relator's claims.  Most witnesses in this case will only testify once.  Accordingly, after Relator questions a witness, Biogen's lawyers may cross-examine the witness, or may question the witness as if they had called that witness themselves.  At the conclusion of Relator's case, Biogen may introduce evidence, and Relator's lawyers may cross-examine Biogen's witnesses.  If Biogen does introduce evidence, Relator may then present rebuttal evidence.

After the evidence has been presented to you, the attorneys on both sides will make their closing arguments, explaining what they believe the evidence has shown.  What is said in the closing arguments is not evidence.

Finally, I will instruct you on the law that you are to apply in reaching your verdict.  You will then decide the case.

Source:        Adapted from 3 Kevin F. O'Malley et al., Federal Jury Practice and Instructions, § 101.02 (6th ed. updated Jan. 2022).

II.     **<u>Instructions to be Given After the Introduction of Particular Evidence During Trial</u>**

**Jury Instruction 1:**        **Rule 1006 Summaries**

The Relator (or Biogen) has presented exhibits in the form of a [chart/summary].  I decided to admit this [chart/summary] in place of the underlying documents that it represents in order to save time and avoid unnecessary inconvenience.  You should consider this [chart/summary] as you would any other evidence.

Source:          Adapted from 4 Leonard B. Sand et al., Modern Federal Jury Instructions—Civil ¶ 74.06, Instruction 74-11 (2022).

**Jury Instruction 2:        Demonstrative Evidence**

This [summary/chart] is being shown to you in order to help explain the facts disclosed by the books, records or other underlying evidence in the case.  This [summary/chart] is used for convenience.  It is not evidence or proof of any facts.  If it does not correctly reflect the facts shown by the evidence in the case, you should disregard this [summary/chart] and determine the facts from the books, records or other underlying evidence.

Source:        Adapted from 8th Cir. Model Civ. Jury Instructions 2.11 (2021).

**Jury Instruction 3:       Use of Depositions**

Some of the testimony before you is in the form of depositions that have been received in evidence.  A deposition is simply a procedure where prior to trial the attorneys for one or both sides may question a witness under oath before a court stenographer.  This is part of the pretrial discovery, and each side is entitled to take depositions.  You may consider the testimony of a witness given at a deposition according to the same standards you would use to evaluate the testimony of a witness given at trial.  You may have heard references to deposition testimony in questions, but unless that deposition testimony was specifically received in evidence, it should not be considered by you as evidence.

Source:       Adapted from 4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶ 74.07, Instruction 74-14 (2022).

**Jury Instruction 4:         Answers to Interrogatories**

You have just heard evidence in this case which is in the form of interrogatories.  Interrogatories are written questions posed by one side that call for written answers under oath from the other side.  Both the questions and answers are made prior to trial after the case has begun in what is called pretrial discovery, and each side is entitled to seek such discovery from the other.

You may consider a party's answers to interrogatories as evidence against a party who made the answer, just as you would any other evidence which has been admitted in this case.

In this regard, you are not required to consider a party's answers to interrogatories as true, nor are you required to give them more weight than any other evidence.  It is up to you to determine what weight, if any, should be given to the interrogatory answers which have been admitted as evidence.

Source:         Adapted from 4 Leonard B. Sand et al., Modern Federal Jury
                Instructions—Civil ¶ 74.07, Instruction 74-13 (2022).

**Jury Instruction 5:      Admissions in Response to Requests for Admission**

You have heard evidence in the form of certain "requests for admission" submitted by the Relator (or Biogen).  Requests for admission are written statements of fact submitted by one party prior to trial to the opposing party.  The opposing party has a certain amount of time in which to respond to the requests, knowing that the failure to respond within that time will be deemed equivalent to admitting the truth of the statements contained in the requests.

You must assume the facts admitted in each party's responses to the requests for admissions to be true.  You are not permitted to disregard or disbelieve the contents of these admissions, even in light of any other evidence presented.  The requests admitted in evidence are binding and conclusive on the parties for the purposes of this trial.

Source:      Adapted from 4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶ 74.08, Instruction 74-15 (2022).

**Jury Instruction 6:       Stipulations**

   The evidence in this case includes facts to which the lawyers have agreed or stipulated.  A stipulation of facts is an agreement among the parties that a certain fact is true.  You must regard such agreed facts as true.

<u>Source</u>:   Adapted from 4 Leonard B. Sand et al., <u>Modern Federal Jury</u> <u>Instructions—Civil</u> ¶ 74.02, Instruction 74-4 (2022).

**III.**     **Pre-Deliberation Instructions and Governing Law**

**Jury Instruction 1:          Role of Court**

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the wisdom of any rule that I state.  Regardless of any opinion that you may have as to what the law may be—or ought to be—it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you.

Source:          Adapted from 4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶ 71.01, Instruction 71-2 (2022).

**Jury Instruction 2:          Role of Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence.  You determine the credibility of the witnesses.  You resolve such conflicts as there may be in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

Source:          4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u>
                      ¶ 71.01, Instruction 71-3 (2020).

**Jury Instruction 3:        Nature of Relator's Claims**

Before I give you more detailed instructions on the law you are going to apply in your deliberations, let me summarize for you again the claims that Relator has brought in this case.

As you heard at the start of this trial, Relator, Michael Bawduniak, has sued Biogen under a federal law called the False Claims Act and similar laws of various states. The federal False Claims Act allows the United States government to recover from anyone who knowingly submits, or knowingly causes others to submit, false or fraudulent claims for the payment of Government funds. The purpose of the False Claims Act is to make the United States government whole for any losses it sustains in the event of a false claim. The Act, however, is not an "all-purpose antifraud statute," and it creates liability only if the conduct alleged caused the submission of claims for payment to the United States government. I will discuss the meaning of the word "claim" in greater detail shortly.

The Relator alleges in this lawsuit that Biogen caused Government Health Insurance Programs, including Medicare and Medicaid to pay fraudulent reimbursement claims for prescriptions for Biogen's MS medications. All of these insurance programs, which I collectively call the "Government Health Insurance Programs", are federally funded programs. The States contribute some of the funding for the Medicaid program, which they also administer.

In this case, the Relator alleges that Biogen knowingly caused the submission of false claims for payment to Government Health Insurance Programs through violations of a separate federal law called the Anti-Kickback Statute, which I will

discuss further in a moment.  Specifically, Relator alleges that certain fees Biogen paid

doctors to speak and get trained to speak at Biogen speaker programs and certain fees

Biogen paid doctors to participate in certain consultant meetings between January 2009

and March 2014, were illegal kickbacks intended to induce those doctors to prescribe

Biogen's MS medications.  Relator also alleges that certain meals provided by Biogen to

attendees at Biogen speaker programs and consultant meetings during that same time

period were also illegal kickbacks.  Relator alleges that the healthcare providers who

received these kickbacks then wrote prescriptions for Biogen medications, and that these

prescriptions were paid for by Government Health Insurance Programs.

Relator alleges that Biogen provided payments and meals to healthcare

providers in violation of the Anti-Kickback Statute, and because of that, the claims made

to Government Health Insurance Programs for prescriptions written by healthcare

providers who received those payments and meals were false or fraudulent claims.

Relator alleges that Biogen is liable for the amount that the Government Health Insurance

Programs paid for those prescriptions.

Biogen denies all of these allegations and denies that it violated the False

Claims Act or the Anti-Kickback Statute.  Biogen contends that its speaker programs

were legitimate and legal educational and promotional events held to provide information

about the benefits, risks and appropriate uses of Biogen's medications to help healthcare

providers' patients with MS.  Biogen contends that its consultant meetings were

legitimate and legal programs designed to allow Biogen to obtain important feedback

from doctors concerning the marketplace, clinical practice and the needs of patients,

which Biogen used to develop better products and adapt its marketing strategies and

promotional materials. Biogen contends that the fees paid to the doctors for providing

feedback at consultant meetings and for being trained to speak or speaking at speaker

programs were intended to compensate the doctors at fair and customary rates for their

time and expertise. Biogen likewise maintains that meals provided at these programs

were not intended to induce prescribing behavior, but instead were intended to encourage

attendance at the program by feeding healthcare providers who attended programs after

business hours. Biogen further contends that healthcare providers prescribed based on

their best interests of patients and not because of fees or meals.

      The states in this case have laws similar to the federal False Claims Act.

My instructions regarding the federal False Claims Act therefore apply equally to the

state-law False Claims Acts.[1]


Sources:      Adapted from 3 Kevin F. O'Malley et al., Federal Jury Practice and
Instructions § 178:10 (6th ed. updated Jan. 2022); 31 U.S.C. §§ 3729–33;
42 U.S.C. § 1320a-7b; Universal Health Servs., Inc. v. United States ex
rel. Escobar, 579 U.S. 176, 194 (2016); United States v. Neifert-White
Co., 390 U.S. 228, 232 (1968); United States ex rel. Marcus v. Hess, 317
U.S. 537, 551–52 (1943); United States ex rel. Bawduniak v. Biogen Idec,
Inc., No. 12-cv-10601-IT, 2018 WL 1996829, at *1 (D. Mass. Apr. 27,
2018); Third Am. Compl., United States ex rel Bawduniak v. Biogen Idec,
Inc., No. 12-cv-10601-IT (D. Mass. June 15, 2016), ECF No. 132, (Doc.
No. 132).

---

[1] The relevant state law False Claims Act claims are addressed infra in Section III,
Instruction 35. In that instruction, Biogen provides both the relevant statutes for states
with live claims in this case, as well as case law demonstrating that each of those states
interpret their statutes consistent with the Federal False Claims Act.

**Jury Instruction 4:          The False Claims Act and the Anti-Kickback**
**Statute**

As I explained a moment ago, Relator alleges that Biogen violated the
False Claims Act, which I will refer to as "the FCA."  The FCA prohibits a person or
company from knowingly causing the submission of materially false or fraudulent claims
for payment to the government.

Relator contends that Biogen caused healthcare providers to provide false
or fraudulent claims to Federal and state Government Health Insurance Programs because
the prescriptions submitted for Biogen's MS medications were the result of illegal
kickbacks in violation of another federal statute called the "Anti-Kickback Statute."  I
will call the Anti-Kickback Statute "the AKS."  Because Relator's FCA claim turns on
whether Biogen violated the AKS, I will first explain the elements Relator must show to
prove Biogen violated the AKS before turning back to explain the additional elements
Relator must show to prove Biogen violated the FCA.

Sources:          Adapted from  31 U.S.C. § 3729(a)(1); 42 U.S.C. § 1320a-7b(b)(2)(B); 3C
Kevin F. O'Malley et al., Federal Jury Practice and Instructions § 178:10
(6th ed. updated Jan. 2022); Universal Health Servs., Inc. v. United States
ex rel. Escobar, 579 U.S. 176, 192–93 (2016); United States ex
rel. Bawduniak v. Biogen Idec, Inc., No. 12-cv-10601-IT, 2018 WL
1996829, at *6 (D. Mass. Apr. 27, 2018).

**Jury Instruction 5:        Elements of the Anti-Kickback Statute**

Relator claims that Biogen violated the FCA by paying illegal kickbacks in violation of the AKS.  The AKS prohibits knowingly and willfully offering or paying "any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person . . . to purchase or . . . recommend purchasing . . . or ordering any [medication] for which payment may be made in whole or in part under a Federal health care program."

In this case, to show that Biogen violated the AKS, Relator must prove by a preponderance of the evidence all of the following four elements, each of which I will explain in greater detail:

> First, that Biogen paid remuneration to a healthcare
> provider;

> Second, that Biogen made the payment of remuneration to
> induce a healthcare provider to write a prescription for one
> of the medications at issue in this case;

> Third, that the medication in question was paid for in whole
> or in part by a Government Health Insurance Program; and

> Fourth, that Biogen acted knowingly and willfully with
> respect to all of these elements.

Sources:        Adapted from 42 U.S.C. § 1320a-7b(b)(2)(B); Substantive Jury
                Instructions at 4, United States v. Reichel, No. 1:15-cr-10324 (D. Mass.
                June 17, 2016), ECF No. 244 (Skaistis Decl,. Ex. 1, Doc. No. 580-1); Trial
                Transcript at 1279:13-1280:2, 1286:6-19, United States v. Krikheli, No.
                08-CR-528 (E.D.N.Y. Mar. 4, 2009), ECF No. 231, aff'd, 461 F. App'x 7,
                11 (2d Cir. 2012) (Skaistis Decl,. Ex. 3, Doc. No. 580-3); 2B Kevin F.
                O'Malley et al., Federal Jury Practice and Instructions - Criminal § 70:03
                (6th ed. updated Jan. 2022).

**Jury Instruction 6:          AKS First Element — Definition of Remuneration**

Let me now discuss each element of the AKS in more detail.  You will recall that the first element requires Relator to prove by a preponderance of the evidence that Biogen paid remuneration to a healthcare provider.

The term "remuneration" means the transfer of cash, property or services to the intended recipient.  It may be offered or paid openly or in a concealed fashion.  It may be offered or paid directly or indirectly, or through another person.  If you find that Relator has not proven by a preponderance of the evidence that Biogen paid remuneration to a healthcare provider, then you must find that Biogen did not violate the AKS.

Sources:          Adapted from Substantive Jury Instructions at 4–5, United States v. Reichel, No. 1:15-cr-10324 (D. Mass. June 17, 2016), ECF No. 244 (Skaistis Decl,. Ex. 1, Doc. No. 580-1); Jury Instructions at 8, United States ex rel. Drakeford v. Tuomey, C/A No. 05-2858 (D.S.C. May 8, 2013) (Skaistis Decl,. Ex. 4, Doc. No. 580-4); Trial Transcript at 1280:9-21, United States v. Krikheli, No. 08-CR-528 (E.D.N.Y. Mar. 4, 2009), ECF No. 231, aff'd, 461 F. App'x 7, 11 (2d Cir. 2012) (Skaistis Decl,. Ex. 3, Doc. No. 580-3).

**Jury Instruction 7:     AKS First Element – Remuneration Benchmark Required**

In order to establish that any fees Biogen paid to a speaker or consultant meets the "remuneration" element of the AKS, Relator must show that the payment exceeded the "fair market value" of the service that the speaker or consultant provided. To do so, Relator must identify a reliable benchmark for fair market value for fees paid to doctors to speak at pharmaceutical speaker programs or participate in consultant meetings and show that the Biogen's payment exceeded that benchmark.

Sources:     Adapted from 42 U.S.C. § 1320a-7a(i)(6); Bingham v. Baycare Health Sys., No. 8:14-cv-73-T-23JSS, 2016 WL 8739056, at *6 (M.D. Fla. Dec. 16, 2016), report and recommendation adopted by 2017 WL 1386838 (M.D. Fla. Apr. 18, 2017); United States ex rel. Brown v. Celgene Corp., 226 F. Supp. 3d 1032, 1054 (C.D. Cal. 2016); Klaczak v. Consol. Med. Transp., 458 F. Supp. 2d 622, 626, 679-80 (N.D. Ill. 2006); United States ex rel. Perales v. St. Margaret's Hosp., 243 F. Supp. 2d 843, 851-52 (C.D. Ill. 2003); United States ex rel. Jamison v. McKesson Corp., 900 F. Supp 2d 683, 699-701 (N.D. Miss. 2012).

**Jury Instruction 8:        AKS Second Element — Purpose of Remuneration**

The second element of the AKS that Relator must prove by a preponderance of the evidence is that the remuneration Biogen provided to a healthcare provider was for the purpose of inducing the healthcare provider to write a prescription for one of the medications at issue in this case.

The AKS does not prohibit a pharmaceutical company from paying healthcare providers to serve as speakers or consultants.  Payments to a healthcare provider do not violate the AKS if intended to compensate for bona fide services.  The AKS does not prohibit a pharmaceutical company from providing meals to attendees at speaker and consultant programs.

Instead, to prove a violation of the AKS, Relator must establish by a preponderance of the evidence that any payments or meals Biogen provided were provided with the intent to induce the recipient to write prescriptions for the medications at issue in this case in exchange for those payments or meals.

If you find that Relator has not proven by a preponderance of the evidence that Biogen provided payments or meals to healthcare providers with the intent to induce the recipient to write prescriptions for the medications at issue in this case in exchange for those payments and meals, then you must find that Biogen did not violate the AKS.


Source:        Adapted from Substantive Jury Instructions at 4–5, United States v. Reichel, No. 1:15-cr-10324 (D. Mass. June 17, 2016), ECF No. 244 (Skaistis Decl,. Ex. 1, Doc. No. 580-1); Trial Transcript at 1280:21–1281:1, 1287:10–15, United States v. Krikheli, No. 1:08-CR-528 (E.D.N.Y. Mar. 4, 2009), ECF No. 231, aff'd 461 F. App'x 7, 11 (2d Cir. 2012) (Skaistis Decl,. Ex. 3, Doc. No. 580-3).

**Jury Instruction 9:        AKS Second Element — Meaning of "To Induce"**

"To induce" means to gain influence over the reason or judgment of a person.  Thus, to pay remuneration with the intent to induce healthcare providers to write prescriptions means to pay remuneration with the intent to gain influence over the reason or judgment of the healthcare provider to effect their decision to prescribe.  The intent to gain such influence over the prescribing decision must be a reason the remuneration was paid.

On the other hand, Biogen did not violate the AKS if you find that it merely hoped or expected or believed that prescriptions by healthcare providers may follow from remuneration that was designed wholly for other purposes, or if the evidence shows merely that Biogen sought to cultivate a business relationship or create a reservoir of good will with healthcare providers that might ultimately affect one or more unspecified future prescriptions.  Likewise, providing healthcare providers with clinical information about Biogen's MS medications or encouraging them to prescribe these medications based on those medications' merits for appropriate patients does not violate the law.

Sources:       Adapted from Substantive Jury Instructions at 5, United States v. Reichel, No. 1:15-cr-10324 (D. Mass. June 17, 2016), ECF No. 244 (Skaistis Decl,. Ex. 1, Doc. No. 580-1); United States v. Krikheli, 461 F. App'x 7, 11 (2d Cir. 2012); United States v. McClatchey, 217 F.3d 823, 834 (10th Cir. 2000); Hanlester Network v. Shalala, 51 F.3d 1390, 1398 (9th Cir. 1995); United States ex rel. Ruscher v. Omnicare Inc., 663 F. App'x 368, 374
(5th Cir. 2016); United States ex rel. Brown v. Celgene Corp., 226 F. Supp. 3d 1032, 1054 (C.D. Cal. 2016); United States ex rel. Osheroff v. Tenet Healthcare Corp., No. 09-22253-CIV, 2012 WL 2871264, at *8 (S.D. Fla. July 12, 2012); United States v. LaHue, 261 F.3d 993, 1003 &

n. 10 (10th Cir. 2001); 2B Kevin F. O'Malley et al., <u>Federal Jury Practice and Instructions</u> § 70:06 (6th ed. updated Jan. 2022).

**Jury Instruction 10:**       **AKS Second Element —** *Quid Pro Quo*[2]

As I explained a moment ago, in order to prove an intent to induce, Relator must prove by a preponderance of the evidence that Biogen intended the remuneration to induce healthcare providers to write prescriptions for Biogen's MS drugs. This means Relator must prove by a preponderance of the evidence that Biogen intended the speaker and consultant fees and meals provided to healthcare providers to be a "quid pro quo" in return for healthcare providers to prescribe Biogen MS medications.

"Quid pro quo" means a "this for that" transaction. In this case, it means Relator must prove that Biogen paid remuneration with the specific intent to give something of value in exchange for a prescription.

If the remuneration paid was only for a purpose other than seeking to effect a quid pro quo transaction of remuneration for prescriptions, it is not within the scope of the AKS. The AKS likewise does not prohibit transactions that reflect the mere hope or expectation or belief that prescriptions may ensue from a business relationship.

It is also the case that a defendant may act with a mixture of motives, but it is Relator's burden to prove that one of Biogen's motives was to pay remuneration in exchange for prescriptions.

Sources:        Adapted from Substantive Jury Instructions at 5, United States v. Reichel, No. 1:15-cr-10324 (D. Mass. June 17, 2016), ECF No. 244 (Skaistis Decl,. Ex. 1, Doc. No. 580-1); Trial Transcript at 1281:2-14, 1287:10-25, United States v. Krikheli, No. 08-CR-528 (E.D.N.Y. Mar. 4, 2009), ECF No. 231, aff'd, 461 F. App'x 7, 11 (2d Cir. 2012) (Skaistis Decl,. Ex. 3, Doc. No.

_____

[2] At the motion to dismiss stage, this Court stated that "Relators need not show that a quid pro quo exchange occurred."  United States ex rel. Bawduniak v. Biogen Idec, Inc., No. 12-cv-10601-IT, 2018 WL 1996829, at *3 (D. Mass. Apr. 27, 2018).  If that represents the decision of the Court, Biogen includes this instruction to make clear that Biogen preserves the issue for appeal, if necessary.

580-3);2B Kevin F. O'Malley et al., <u>Federal Jury Practice and Instructions</u>
§ 70:06 (6th ed. updated Jan. 2022).

**Jury Instruction 11:     AKS Second Element — Distinguishing Between an Intent to Induce Prescriptions and an Intent to Increase Prescriptions through Educational or Promotional Messaging**

When deciding Biogen's intent, it is important to distinguish between payments made with an intent to induce healthcare providers to write prescriptions and payments made to pay for legitimate services that Biogen hopes or expects will lead to increased prescriptions.

For example, if Biogen's purpose for paying fees to doctors to speak at speaker programs was to compensate those doctors for their time and expertise so that they would agree to speak on behalf of Biogen, that is not an intent to induce prescriptions, even if Biogen hoped or expected or believed that prescriptions for its MS medications would increase as a result of the information about its MS medications provided at speaker programs.

Likewise, if Biogen's purpose for providing meals to speaker program attendees was to encourage them to attend those programs during mealtime and/or after business hours, that is not an intent to induce prescriptions, even if Biogen hoped and expected that the healthcare providers who attended speaker programs would write more prescriptions as a result of the program.

Sources:          Adapted from Substantive Jury Instructions at 5, United States v. Reichel, No. 1:15-cr-10324 (D. Mass. June 17, 2016), ECF No. 244 (Skaistis Decl,. Ex. 1, Doc. No. 580-1); United States v. McClatchey, 217 F.3d 823, 834 (10th Cir. 2000); United States ex rel. Ruscher v. Omnicare Inc., 663 F. App'x 368, 374 (5th Cir. 2016); United States ex rel. King v. Solvay Pharms., Inc., 871 F.3d 318, 332 (5th Cir. 2017); United States v. LaHue, 261 F.3d 993, 1003 & n. 10 (10th Cir. 2001); United States ex rel. Brown v. Celgene Corp., 226 F. Supp. 3d 1032, 1054–57 (C.D. Cal. 2016).

**Jury Instruction 12:    AKS Third Element — Coverage by Health Care Program**

The third element of the AKS that Relator must prove by a preponderance of the evidence is that the prescriptions for the Biogen MS medications at issue in this case were reimbursed in whole or in part by a Government Health Insurance Program.

If you do not find that Relator has proven by a preponderance of the evidence that prescriptions for the Biogen MS medications at issue in this case were reimbursed in whole or in part by a Government Health Insurance Program, then you must find that Biogen did not violate the AKS.

Sources:        Adapted from Substantive Jury Instructions at 4, United States v. Reichel, No. 1:15-cr-10324 (D. Mass. June 17, 2016), ECF No. 244 (Skaistis Decl,. Ex. 1, Doc. No. 580-1).

**Jury Instruction 13:      AKS Fourth Element — Acting Knowingly and Willfully**

The fourth element of the AKS that Relator must prove by a preponderance of the evidence is that Biogen acted both knowingly and willfully.

"Knowingly" means that the act was done intelligently and not because of ignorance or misunderstanding.

"Willfully" means that the act was done voluntarily and intentionally and with the specific intent that the elements of the offense be undertaken.  That is, the act was done with bad purpose either to disobey or disregard the law.  A person acts willfully if he or she acts unjustifiably and wrongly while knowing that his or her actions are unjustifiable and wrong.  That does not mean that Relator has to prove that Biogen knew there is a specific statute called the Anti-Kickback Statute, but that Biogen acted with the specific intent to violate the legal duties that the AKS imposes.

If you find that Relator has not proven by a preponderance of the evidence that Biogen knowingly and willfully paid remuneration in order to induce healthcare providers to prescribe the Biogen MS medications at issue in this case, then you must find that Biogen did not violate the AKS.

Sources:          Adapted from 4 Leonard B. Sand et al., Modern Federal Jury Instructions—Criminal ¶ 27A.05, Instruction 27A-31 (Lexis 2022); United States v. Bay State Ambulance & Hosp. Rental Serv., Inc., 874 F.2d 20, 33 (1st Cir. 1989); United States v. Mittal, 36 Fed. Appx. 20, 21 (2d Cir. 2002); United States v. McClatchey, 217 F.3d 823, 829 (10th Cir. 2000); Hanlester Network v. Shalala, 51 F.3d 1390, 1400 (9th Cir. 1995); United States v. Davis, 132 F.3d 1092, 1094 (5th Cir. 1998); United States v. Starks, 157 F.3d 833, 838-839 (11th Cir. 1998); Klaczak v. Consol. Med. Transp., 458 F. Supp. 2d 622, 674-77 (N.D. Ill. 2006); see United States v. Lizardo, 445 F.3d 73, 86 (1st Cir. 2006); Trial Transcript 1282:5-18, United States v. Krikheli, No. 08-CR-528 (E.D.N.Y. Mar. 4, 2009), ECF

No. 231, <u>aff'd</u> 461 F. App'x 7, 10–11 (2d Cir. 2012) (Skaistis Decl,. Ex. 3, Doc. No. 580-3).

**Jury Instruction 14:        AKS Fourth Element — Good Faith**

If Biogen acted in good faith, then it did not knowingly and willfully pay a kickback to induce prescriptions in violation of the AKS.  If you find that Biogen believed in good faith that it was acting properly, even if it was mistaken in that belief, there is no violation of the AKS.

The burden of proving that Biogen acted knowingly and willfully and, consequently, to prove lack of good faith, is on the Relator.

Similarly, if Biogen relied in good faith on the advice of an outside advisor, then it did not knowingly and willfully pay a kickback to induce prescriptions in violation of the AKS.  A defendant acts with good faith reliance on the advice of an outside advisor if it:  (1) discloses all relevant information to the advisor; (2) seeks advice about the appropriateness of the relevant conduct; (3) receives advice stating the conduct was appropriate; and (4) relies on that advice in good faith.

Sources:        Adapted from Substantive Jury Instructions at 6–7, United States v. Reichel, No. 1:15-cr-10324 (D. Mass. June 17, 2016), ECF No. 244 (Skaistis Decl,. Ex. 1, Doc. No. 580-1);United States ex rel. Lutz v. Mallory, 988 F.3d 730, 739 (4th Cir. 2021); United States v. Jain, 93 F.3d 436, 440 (8th Cir. 1996); 3 Kevin F. O'Malley et al., Federal Jury Practice and Instructions § 70:08 (6th ed. updated Jan. 2022); see United States v. Shah, 981 F.3d 920, 927 (11th Cir. 2020); SEC v. Goldsworthy, No. CIV.A. 06-10012-JGD, 2008 WL 8901272, at *4-5 (D. Mass. June 11, 2008); SEC v. Caserta, 75 F. Supp. 2d 79, 94 (E.D.N.Y. 1999); 4 Leonard B. Sand et al., Modern Federal Jury Instructions—Criminal ¶ 8.01, Instruction 8-1 (2022).

### Jury Instruction 15:    AKS Fourth Element — Collective Knowledge Insufficient

Biogen is a corporation.  To prove that a corporation knowingly and willfully violated the AKS, Relator must prove by a preponderance of evidence that at least one individual employee acting on behalf of Biogen knowingly and willfully violated the AKS.  In order for an employee to act on behalf of Biogen, the employee must have sufficient authority with respect to the matter at issue such that his or her actions can be imputed to the corporation.

This means that, with respect to the payments and meals alleged to have violated the AKS, Relator must prove by a preponderance of the evidence that an individual employee with the authority to act on behalf of Biogen knowingly and willfully authorized those payments or meals with the intent to induce a healthcare provider to prescribe one of the medications at issue in this case.  Relator cannot carry his burden by combining the discrete knowledge or intentions of multiple employees who never had contact with each other or did not know what others were doing in connection with remuneration paid to a healthcare provider to establish a composite showing of corporate knowledge.

Sources:    Adapted from Jury Instructions at 12, United States ex rel. Drakeford v. Tuomey, C/A No. 05-2858 (D.S.C. May 8, 2013), ECF No. 810 (Skaistis Decl,. Ex. 4, Doc. No. 580-4); United States v. Sci. Applications Int'l Corp., 626 F.3d 1257, 1274–76 (D.C. Cir. 2010); United States v. United Techs. Corp., 51 F. Supp. 2d 167, 196-99 (D. Conn. 1999);  United States ex rel. Martin v. Life Care Ctrs. of Am., Inc., 114 F. Supp. 3d 549, 567 (E.D. Tenn. 2014); United States ex rel. Dyer v. Raytheon Co., No. 08-10341-DPW, 2013 WL 5348571, at *26-27 (D. Mass. Sept. 23, 2013); Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 195 (2d Cir. 2008); In re Tyson Foods, Inc. Sec. Litig., 155 F. App'x 53, 57 (3d Cir. 2005) (citing Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 366 (5th Cir. 2004); Chaney v. Dreyfus Serv. Corp., 595 F.3d 219, 241 (5th Cir. 2010) (internal citations omitted).

**Jury Instruction 16:        FCA's Relation to the AKS**

If you find that Relator has not proven all four elements of an AKS claim by a preponderance of the evidence, then you must find in favor of Biogen because Relator's False Claims Act claim relies on a finding that Biogen violated the AKS.

If you find that Relator has proven all four elements of an AKS claim by a preponderance of the evidence, then you must next determine whether Biogen's conduct caused the submission of false claims for payment by Government Health Insurance Programs in violation of the False Claims Act.  That is because proving that a defendant violated the AKS is not enough to prove that the defendant also violated the FCA.  I will next explain the elements of the FCA.

<u>Sources</u>:        Adapted from 31 U.S.C. § 3731(d); <u>United States ex rel. King v. Solvay Pharms., Inc.</u>, 871 F.3d 318, 331-2 (5th Cir. 2017); <u>United States ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.</u>, 772 F.3d 1102, 1107 (7th Cir. 2014); <u>United States ex rel. Ruscher v. Omnicare Inc.</u>, 663 F. App'x 368, 374 n.6 (5th Cir. 2016) .

**Jury Instruction 17:    FCA Essential Elements of Section 3729(a)(1)(A)**

Here, Relator alleges that Biogen violated the FCA through violations of the AKS.  Specifically, Relator alleges that illegal kickbacks Biogen paid to healthcare providers to induce prescriptions in violation of the AKS caused false or fraudulent reimbursement claims for Biogen MS medications to be submitted to Government Health Insurance Programs for prescriptions written by those healthcare providers.  To prove this violation, Relator must prove the following five elements by a preponderance of the evidence:

    (1)    a false claim resulting from a violation of the AKS;

    (2)    Biogen caused the submission of the false claim;

    (3)    Biogen acted "knowingly;"

    (4)    the misrepresentation or violation rendering the claim false was material to the Government Health Insurance Program's payment decision;[3] and

    (5)    Government Health Insurance Programs suffered damages as a result of the false or fraudulent claim.[4]

Relator has the burden of proving by a preponderance of the evidence each of the above elements concerning each claim that Relator contends was false.

---

[3] It is Biogen's position that the law requires Relator to prove that Biogen's conduct which Relator asserts violates the AKS was material to the government's reimbursement decision.  To the extent the Court's view is that Relator does not need to make a separate materiality showing, Biogen preserves the issue for appeal.

[4] Biogen acknowledges that the First Circuit Court of Appeals has stated that a defendant may be liable under the FCA for statutory penalties even absent damages.  See United States v. Rivera, 55 F.3d 703, 709 (1st Cir. 1995).  Biogen respectfully disagrees with that holding and notes that the United States Supreme Court granted a petition of certiorari to address that question but did not answer the question of whether damages is a required element for FCA liability.  If the Court does not include this instruction, Biogen preserves the issue for appeal, if necessary.

Sources;        Adapted from 31 U.S.C. § § 3729(a)(1)(A), 3731(d); 42 U.S.C. § 1320a-7b(g); Univ. Health Servs., Inc. v. United States ex rel. Escobar, 579 U.S. 176, 192–93, n.2 (2016); U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 389-90 (1st Cir. 2011); United States ex rel. Williams v. City of Brockton, No. 12-cv-12193-IT, 2020 WL 887706, at *4–5 (D. Mass. Feb. 24, 2020) (Talwani, J.); United States ex rel. King v. Solvay Pharms., Inc., 871 F.3d 318, 332 (5th Cir. 2017); United States ex rel. Arnstein v. Teva Pharms. USA, Inc., No. 13 CIV. 3702 (CM), 2019 WL 1245656, at *28-29 (S.D.N.Y. Feb. 27, 2019) (citing Escobar, 579 U.S. at 195); United States v. Krizek, 7 F. Supp. 2d 56, 58-59 (D.D.C. 1998); United States v. Intervest Corp., 67 F. Supp. 2d 637, 646 (S.D. Miss. 1999) (citing Young-Montenay, Inc. v. United States, 15 F.3d 1040, 1043 (Fed. Cir. 1994); U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Acc. Ins. Co., 721 F. Supp. 1247, 1258 (S.D. Fla. 1989).; Final Jury Instructions at 5–6, United States v. J-M Mfg. Co., No. 5:06-cv-00055-GW-PJW, (C.D. Cal. Nov. 14, 2013), ECF No. 1792 (Skaistis Decl,. Ex. 5, Doc. No. 580-5).

**Jury Instruction 18:        Definition of "Claim"**

A "claim" is a request for payment from the United States Government. Here, the claims at issue are claims for reimbursements for prescriptions for Biogen medications submitted to Government Health Insurance Programs.  You may not speculate that any element that you find applies to any one specific claim for reimbursement also applies to any other claim for reimbursement, unless there is evidence the element also applies to the other claim for reimbursement.


Sources:        Adapted from 31 U.S.C. § 3729(b)(2); <u>United States ex rel. Wall v. Vista Hospice Care, Inc.</u>, No. 3:07-cv-00604-M, 2016 WL 3449833, at *11–14 (N.D. Tex. June 20, 2016); <u>United States v. Krizek</u>, 7 F. Supp. 2d 56, 58–59 (D.D.C. 1998); Jury Instructions at 35, <u>United States ex rel Bunk v. Bikart Globistics GmbH & Co.</u>, No. 1:02-cv-01168 (E.D. Va. Aug. 1, 2014), ECF No. 1312-3 (Skaistis Decl,. Ex. 6, Doc. No. 580-6).

**Jury Instruction 19:     FCA First Element — Only Claims "Resulting From" an AKS Violation Are False Claims**

In order for a claim based on an AKS violation to be a "false claim" under the first element of the FCA, Relator must prove by a preponderance of the evidence that the claim "resulted from" a violation of the AKS.  In other words, only claims for reimbursement for a medication that was prescribed as a result of an AKS violation constitute a false claim.[5]

Therefore, in order to satisfy the first element of his FCA claim, Relator must prove by a preponderance of the evidence that a payment or meal Biogen made to a healthcare provider to induce prescriptions actually caused the healthcare provider to prescribe a Biogen MS medication.  If a healthcare provider wrote a prescription for a Biogen MS medication for other reasons, including that the medication was best suited for the patient based on the healthcare provider's independent medical judgment, then the claim is not false because it does not result from Biogen's AKS violation.  In other words, Relator must show that the healthcare provider would not have prescribed the Biogen MS medication but for the illegal kickback.

If you find that Relator has not proven by a preponderance of the evidence that a payment or meal Biogen made to a healthcare provider to induce prescriptions actually caused the healthcare provider to prescribe a Biogen MS medication, then there is no FCA violation.

---

[5] It is Biogen's position that the law requires Relator to prove actual causation in order to prove AKS violations tainted claims such that they constitute false claims under the FCA pursuant to 42 U.S.C. § 1320a-7b(g).  The Relator has argued otherwise.  To the extent the Court disagrees with Biogen, Biogen preserves the issue for appeal, if necessary.

Sources:    42 U.S.C. § 1320a-7b(g); <u>United States ex rel. King v. Solvay Pharms.,</u>
<u>Inc.</u>, 871 F.3d 318, 331-32 (5th Cir. 2017); <u>United States ex rel. Health</u>
<u>Choice All., LLC v. Eli Lilly & Co., Inc.,</u> No. 5:17-CV-123-RWS-CMC,
2018 WL 4026986, at *51 (E.D. Tex. July 25, 2018) (subsequent history
omitted);  <u>Health Choice Grp., LLC v. Bayer Corp.,</u> No. 5:17-CV-126-
RWS-CMC, 2018 WL 3637381 (E.D. Tex. June 29, 2018); <u>U.S. ex rel</u>
<u>Arnstein v. Teva Pharms. USA, Inc.,</u> No. 13 CIV. 3702 (CM), 2019 WL
1245656, at *27 (S.D.N.Y. Feb. 27, 2019) (applying <u>U.S. ex. rel.</u>
<u>Greenfield v. Medco Health Sols. Inc.,</u> 880 F.3d 89 (3d Cir. 2018); <u>U.S. ex</u>
<u>rel. Colquitt v. Abbott Lab'ys</u>, 858 F.3d 365, 372 (5th Cir. 2017); <u>see also</u>
<u>Burrage v. United States</u>, 571 U.S. 204, 210-11 (2014).

**Jury Instruction 20:        FCA First Element – False Certification**

For claims for payment submitted before March 23, 2010, Relator must prove by a preponderance of the evidence that healthcare providers made either false express or implied certifications of compliance with the AKS when submitting claims to Government Health Insurance Programs for reimbursement.

A party submitting a claim makes an express false certification of compliance with the AKS when that party expressly and falsely certifies compliance with the AKS, where complying with the AKS is necessary for payment.

On the other hand, a party submitting a claim makes an implied false certification of compliance with the AKS where two conditions are satisfied:  first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths.


Sources:        Adapted from Adapted from Universal Health Servs., Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989, 1999-2001 (2016); United States ex rel. Bawduniak v. Biogen Idec, Inc., No. 12-cv-10601-IT, 2018 WL 1996829, at *4-5 (D. Mass. Apr. 27, 2018); United States v. President & Fellows of Harvard Coll., 323 F. Supp. 2d 151, 180-81 (D. Mass. 2004).

**Jury Instruction 21:      FCA Second Element — Proximate Causation**

Relator does not allege that Biogen directly submitted any claims for payment to Government Health Insurance Programs, so you must decide whether Biogen caused the submission of false claims for payment to those programs.

When, as here, a defendant is not the party who submitted the claim, a defendant causes the submission of a false claim only if the defendant's conduct proximately caused the false claim to be submitted.

To establish that remuneration paid to healthcare providers proximately caused the submission of false claims to a Government Health Insurance Program, Relator must prove the following by a preponderance of the evidence:

(1)     That the remuneration Biogen paid was a substantial contributing factor in the healthcare provider's decision to prescribe one of Biogen's MS medications.  A substantial factor is an important or material factor and not one that is insignificant; and

(2)     The submission of a false claim for payment as a result of the healthcare provider's prescription decision was a reasonably foreseeable consequence of the remuneration Biogen paid to the healthcare provider.

If, however, a healthcare provider instead prescribed a Biogen MS medication to his or her patient based on their independent medical judgment that the medication was best suited for the patient, for example, then the causal link between Biogen's conduct and the reimbursement claim has been broken and there is no proximate causation.

69

If you find that Relator has not proven by a preponderance of the evidence that Biogen proximately caused the submission of false claims for payment to those Government Health Insurance Programs, then there is no FCA violation.

Sources:  Adapted from <u>Ruckh v. Salus Rehab., LLC</u>, 963 F.3d 1089, 1106–07 (11th Cir. 2020); <u>United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah</u>, 472 F.3d 702, 714–15, 715 n.17 (10th Cir. 2006) <u>abrogated on other grounds by</u> <u>Cochise Consultancy  v. United States ex rel. Hunt</u>, 139 S. Ct. 1507 (2019); <u>United States ex rel. Schmidt v. Zimmer</u>, 386 F.3d 235, 244–45 (3d Cir. 2004); <u>U.S. v. Luce</u>, 873 F.3d 999, 1014 (7th Cir. 2017); <u>United States ex rel.</u> <u>Arnstein v. Teva Pharms. USA, Inc.</u>, No. 13 CIV. 3702 (CM), 2019 WL 1245656, at *25 (S.D.N.Y. Feb. 27, 2019); <u>United States v. Honeywell Int'l Inc.</u>, 502 F. Supp. 3d. 427, 458–59, 459 n.11 (D.D.C. 2020); <u>United States ex rel. Schiff v. Marder</u>, 208 F. Supp. 3d 1296, 1312–13 (S.D. Fla. 2016); <u>see</u> <u>Universal Health Services, Inc. v. United States ex rel. Escobar</u>, 579 U.S. 176, 187 n.2 (2016); <u>United States ex rel. Hutcheson v. Blackstone Med., Inc.</u>, 647 F.3d 377, 391–92 (1st Cir. 2011); <u>Guilfoile v. Shields</u>, 13 F.3d 178, 191 (1st Cir. 2019); <u>United States v. Kirkland</u>, 330 F. Supp. 2d 1151, 1174 (D. Or. 2004); <u>Cause</u>, Black's Law Dictionary (11th Ed. 2019); Restatement (Second) of Torts § 433 cmt. d (1965).

**Jury Instruction 22:     FCA Third Element — Knowledge Standard
Overview**

The third element of Relator's FCA claim is that Biogen acted knowingly.

Relator may prove Biogen acted knowingly under three standards:  (1) actual knowledge;

(2) deliberate ignorance; or (3) reckless disregard.  I will now instruct you on these three

standards.

If you find that Relator has not proven by a preponderance of the evidence

that Biogen acted knowingly under one of these three standards, then there is no FCA

violation.


Sources:          Adapted from 31 U.S.C. § 3729(b)(1)(A); Urquilla-Diaz v. Kaplan Univ.,
                  780 F.3d 1039, 1057–59 (11th Cir. 2015); United States ex rel. Jones v.
                  Birgh & Women's Hosp., 678 F.3d 72, 95–96 (1st Cir. 2012); United
                  States ex rel. Loughren v. Unum Grp., 613 F.3d 300, 312 (1st Cir. 2010);
                  United States v. President & Fellows of Harvard Coll., 323 F. Supp. 2d
                  151, 189 (D. Mass. 2004).

**Jury Instruction 23:       FCA Third Element — Definition of "Actual Knowledge"**

Relator may prove Biogen acted knowingly by proving by a preponderance of the evidence that Biogen had actual knowledge that the AKS was being violated and that healthcare providers were falsely certifying compliance with the AKS. In other words, you may find that Biogen violated the FCA if you find that Biogen actually knew that there was a violation of the AKS and that healthcare providers were falsely certifying compliance and did not act through ignorance, mistake or accident.

<u>Source</u>:        Adapted from Jury Instructions at 12, <u>United States ex rel. Drakeford v. Tuomey</u>, C/A No. 05-2858 (D.S.C. May 8, 2013), ECF No. 810 (Skaistis Decl,. Ex. 4, Doc. No. 580-4); <u>Urquilla-Diaz v. Kaplan Univ.</u>, 780 F.3d 1039, 1058 & n.15 (11th Cir. 2015).

**Jury Instruction 24:       FCA Third Element — Definition of "Deliberate Ignorance" and "Reckless Disregard"**

Relator may also prove that Biogen acted "knowingly" by proving by a preponderance of the evidence that Biogen acted with deliberate ignorance or reckless disregard as to whether healthcare providers' certifications of compliance with the AKS were false.

To find that Biogen acted with "deliberate ignorance," you must find that Biogen deliberately avoided learning that remuneration provided to healthcare providers violated the AKS and was causing the submission of false claims for payment.

To find that Biogen acted with "reckless disregard," you must find that Biogen had reason to believe that the claims contained inaccurate information but that Biogen failed to make an investigation into whether or not the information submitted to the Government Health Insurance Program was true.  An innocent mistake or mere negligence as to whether the payments violated the AKS or caused the submission of false claims for payment to the Government Health Insurance Program is insufficient to establish Biogen's liability.  Reckless disregard is an aggravated form of gross negligence that addresses the refusal to learn of information which an individual, in the exercise of prudent judgment, should have discovered.

Source:        Adapted from Jury Instructions at 12, United States ex rel. Drakeford v. Tuomey, C/A No. 05-2858 (D.S.C. May 8, 2013), ECF No. 810  (Skaistis Decl,. Ex. 4, Doc. No. 580-4); Urquilla-Diaz v. Kaplan Univ., 780 F.3d 1039, 1058 & n.15 (11th Cir. 2015); United States v. King-Vassel, 728 F.3d 707, 712–13 (7th Cir. 2013); United States v. Krizek, 111 F.3d 934, 941–42 (D.C. Cir. 1997); United States v. Jewell, 532 F.2d 697, 700 (9th Cir. 1976), cert. denied, 426 U.S. 951 (1976); United States ex rel. Williams v. City of Brockton, No. 12-cv-12193-IT, 2020 WL 887706, at *8 (D. Mass. Feb. 24, 2020) (Talwani, J.).

**Jury Instruction 25:    FCA Third Element — Reliance on Compliance Program; Mistake or Negligence Not Sufficient**

In deciding whether Biogen "knowingly" violated the law, you may consider whether Biogen had in place and relied on a compliance program designed to detect and prevent violations of the law by Biogen employees. If you find that Biogen employees had no reason to believe that healthcare providers' claims contained inaccurate information due to its policies and procedures in place, or if you find that Biogen conducted a reasonable and prudent investigation into whether or not there was a violation of the AKS, then you may find Biogen not liable. In addition, innocent mistakes or incorrect claims submitted through mere negligence are not offenses under the FCA.

Sources:          Adapted from United States ex rel. Hefner v. Hackensack Univ. Med. Ctr., 495 F.3d 103, 109–10 (3d Cir. 2007); United States v. President & Fellows of Harvard Coll., 323 F. Supp. 2d 151, 189 (D. Mass. 2004); United States v. King-Vassel, 728 F.3d 707, 712-13 (7th Cir. 2013).

**Jury Instruction 26:      FCA Third Element — Collective Knowledge Insufficient**

As I instructed you previously when I instructed you regarding the AKS, to prove that Biogen "knowingly" caused the submission of a false claim, Relator cannot combine the discrete knowledge or intentions of multiple employees to establish a composite showing of corporate knowledge. Instead, Relator must prove with respect to each false claim alleged that at least one individual employee of Biogen with the authority to act on Biogen's behalf had all the relevant factual information to satisfy the FCA's "knowledge" standard. In this case, that means Relator needs to prove that at least one individual employee with the authority to act on behalf of Biogen knew that the remuneration paid to a healthcare provider violated the AKS and that such remuneration was causing a healthcare provider to submit a false claim for payment to the Government for a prescription for a Biogen medication. An employee acts on behalf of Biogen only if the employee has sufficient authority with respect to the matter at issue such that his or her actions can be imputed to the corporation.

Sources:       Adapted from Jury Instructions, United States ex rel. Drakeford v. Tuomey, C/A No. 3:05-2858-MBS (D.S.C. May 8, 2013), ECF No. 810 at 12 (Skaistis Decl,. Ex. 4, Doc. No. 580-4); United States ex rel. Dyer v. Raytheon Co., No. 08-10341-DPW, 2013 WL 5348571, at *26 (D. Mass. Sept. 23, 2013); United States v. United Techs. Corp., 51 F. Supp.2d 167, 196–99 (D. Conn. 1999); United States ex rel. Martin v. Life Care Ctrs. of Am., Inc., 114 F.Supp.3d 549, 567 (E.D. Tenn. 2014); United States v. Sci. Applications Int'l Corp., 626 F.3d 1257, 1274–76 (D.C. Cir. 2010); see also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 195 (2d Cir. 2008); In re Tyson Foods, Inc. Sec. Litig., 155 F. App'x 53, 57 (3d Cir. 2005) (citing Southland Sec. Corp. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 366 (5th Cir. 2004)); Chaney v. Dreyfus Serv. Corp., 595 F.3d 219, 241 (5th Cir. 2010) (internal citations omitted).

**Jury Instruction 27:     FCA Fourth Element — Materiality[6]**

The fourth element of an FCA claim is that the misrepresentation that makes the claim false was material to the Government Health Insurance Program's payment decision. "Material" means "having a natural tendency to influence, or be capable of influencing." Relator must prove by a preponderance of the evidence that the AKS violation was material to the Government Health Insurance Program's decision to reimburse the claim for a Biogen MS medication.

The materiality standard is demanding. It is not satisfied because the Government would have the option to decline to pay if it knew of the alleged noncompliance. Nor is it satisfied merely because the Government designates compliance with a particular statutory, regulatory or contractual requirement as a condition of payment.

If you find that Relator has not proven by a preponderance of the evidence that the misrepresentation that makes the claim false was material to the Government Health Insurance Program's payment decision, then there is no FCA violation.

Sources:          Adapted from 31 U.S.C. § 3729(b)(4); Universal Health Servs., Inc. v. United States ex rel. Escobar, 579 U.S. 176, 181, 190–96 (2016); United States ex rel. Winkelman v. CVS Caremark Corp., 827 F.3d 201, 211 (1st Cir. 2016); United States ex rel. Loughren v. Unum Grp., 613 F.3d 300, 307 (1st Cir. 2010); United States ex rel. Arnstein v. Teva Pharms. USA, Inc., No. 13 CIV. 3702 (CM), 2019 WL 1245656, at *28-29 (S.D.N.Y. Feb. 27, 2019) (citing Escobar, 579 U.S. at 195).

---

[6] As reflected in Jury Instructions 26 and 27, it is Biogen's position that the law requires Relator to prove that Biogen's conduct which Relator asserts violates the AKS was material to the government's reimbursement decision. To the extent the Court decides that Relator does not need to make a separate materiality showing, Biogen preserves the issue for appeal, if necessary.

**Jury Instruction 28:     FCA Fourth Element — Effect of Government Knowledge on Materiality**

A Government Health Insurance Program's payment of alleged false claims even after learning of the alleged conduct rendering those claims false is an important fact in determining whether that conduct was material to the Government Health Insurance Program's decision to pay those claims.  If you find that a Government Health Insurance Program continued paying claims for prescriptions for Biogen's MS medications written by healthcare providers who received alleged kickbacks after the Government Health Insurance Program learned of Relator's allegations, such a finding provides strong evidence that Biogen's conduct was not material to the Government Health Insurance Program's payment decisions with respect to claims for payment for prescriptions of those medications.  You may consider this strong evidence in determining whether Relator has proven by a preponderance of the evidence that Biogen's conduct was material to the Government Health Insurance Program's payment decisions for prescriptions of those medications.

Sources:        Adapted from Universal Health Servs., Inc. v. United States ex rel. Escobar, 579 U.S. 176, 192–96 (2016); United States ex rel. Nargol v. Depuy Orthopaedics, Inc., 865 F.3d 29, 34–35 (1st Cir. 2017); D'Agostino v. ev3, Inc., 845 F.3d 1, 7 (1st Cir. 2016).

**Jury Instruction 29:    FCA Fifth Element – Proof of Damages Required[7]**

The fifth element of an FCA claim is that Relator must prove by a preponderance of the evidence that a Government Health Insurance Program suffered damages as a result of false claims Biogen caused to be submitted.  In other words, that a Government Health Insurance Program lost money as a result of the false claims.  I will instruct you further on how to determine whether a Government Health Insurance Program suffered damages in a moment.

If you find that Relator has not proven by a preponderance of the evidence that a Government Health Insurance Program suffered damages as a result of false claims that Biogen caused to be submitted, then there is no FCA violation.

Sources:    Adapted from 31 U.S.C. § 3731(d); Universal Health Servs., Inc. v. United States ex rel. Escobar, 579 U.S. 176, 187 n.2 (2016); United States v. Intervest Corp., 67 F. Supp. 2d 637, 646 (S.D. Miss. 1999) (citing Young-Montenay, Inc. v. United States, 15 F.3d 1040, 1043 (Fed. Cir. 1994); U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Acc. Ins. Co., 721 F. Supp. 1247, 1258 (S.D. Fla. 1989).

.

---

[7] Biogen acknowledges that the First Circuit Court of Appeals has stated that a defendant may be liable under the FCA for statutory penalties even absent damages.  See United States v. Rivera, 55 F.3d 703, 709 (1st Cir. 1995).  Biogen respectfully disagrees with that holding, notes that the United States Supreme Court had granted certiorari on the question in a case following Rivera, but did not ultimately address the question whether damages is a required element for FCA liability. Hughes Aircraft v. U.S. ex rel. Schumer, 519 U.S. 926 (1996); Petition for Writ of Certiorari at *i, 1996 WL 33413839, Hughes Aircraft v. U.S. ex rel. Schumer (filed Feb. 15, 1996); see Hughes Aircraft Co. v. U.S. ex rel. Schumer, 520 U.S. 939 (1997).  Biogen has therefore included this element to preserve the issue for appeal, if necessary.

**Jury Instruction 30:     Consider Damages Only if Necessary**

If you find that Relator has carried his burden on the essential elements under the AKS and FCA, you must next determine the monetary damages, if any, a Government Health Insurance Program has sustained because of the violation or violations.  You should not interpret the fact that I am providing instructions about damages as an indication in any way that I believe that Relator should or should not prevail on his claims.  It is your task to decide whether Biogen is liable.  I am instructing you on the calculation of damages only so that you will have guidance in the event you decide Biogen is liable and that Relator is entitled to recover damages.

<u>Sources</u>:          Adapted from 3 Kevin F. O'Malley et al., <u>Federal Jury Practice and Instructions</u> § 106:02 (6th ed. updated Jan. 2022); Jury Instruction No. 43, <u>United States ex rel Bunk v. Bikart Globistics GmbH & Co.</u>, No. 1:02-cv-01168 (E.D. Va. Aug. 1, 2014), ECF No. 1312-3 (Skaistis Decl,. Ex. 6, Doc. No. 580-6); Jury Instructions at 14, <u>United States ex rel. Drakeford v. Tuomey</u>, C/A No. 05-2858 (D.S.C. May 8, 2013), ECF No. 810 (Skaistis Decl,. Ex. 4, Doc. No. 580-4).

**Jury Instruction 31:     Damages Causation**

Damages in a False Claims Act case include only the losses that the defendant's conduct proximately caused.  If you conclude that Biogen paid kickbacks to a healthcare provider, but that the kickbacks played no part in a healthcare provider's decision to prescribe a Biogen medication, then you must find that the Government Health Insurance Program suffered no damages as a result of that prescription.  By way of example, a kickback may have played no part in a healthcare provider's decision to prescribe a Biogen medication because the healthcare provider's independent medical judgment was the reason he or she wrote that prescription or because he or she prescribed the medication before the kickback was paid.  Additionally, Relator must show by a preponderance of the evidence that the amount that the Government Health Insurance Program paid out was a foreseeable consequence of Biogen's conduct.  In this case, that means that Relator must show by a preponderance of the evidence that payment by Government Health Insurance Programs for prescriptions written by healthcare providers to whom Biogen paid illegal kickbacks was a foreseeable consequence of Biogen's conduct.

Sources:     Adapted from Jury Instruction No. 44, <u>United States ex rel Bunk v. Bikart Globistics GmbH & Co.</u>, No. 1:02-cv-01168 (E.D. Va. Aug. 1, 2014), ECF No. 1312-3 (Skaistis Decl,. Ex. 6, Doc. No. 580-6); 3 Kevin F. O'Malley et al., <u>Federal Jury Practice and Instructions</u> § 178:60 (6th ed. updated Jan. 2022); <u>U.S. ex rel Arnstein v. Teva Pharms. USA, Inc</u>., No. 13 CIV. 3702 (CM), 2019 WL 1245656, at *25 (S.D.N.Y. Feb. 27, 2019) (quoting <u>United States ex rel. Schmidt v. Zimmer, Inc</u>., 386 F.3d 235, 244-45 (3d Cir. 2004)); <u>United States v. Luce</u>, 873 F.3d 999, 1010-11 (7th Cir. 2017) ((citing <u>United States v. Hibbs</u>, 568 F.2d 347 (3d Cir. 1977));; <u>United States v. Hodge</u>, 933 F.3d 468, 475 (5th Cir. 2019); <u>United States ex rel. Schwedt v. Planning Rsch. Corp.</u>, 59 F.3d 196, 199-200 (D.C. Cir. 1995); <u>United States v. Hibbs</u>, 568 F.2d 347, 349 (3d Cir. 1977); <u>United</u>

States v. Miller, 645 F.2d 473, 475–76 (5th Cir. 1981) (citing Hibbs, 568
F.2d 347, 351).

**Jury Instruction 32:          Burden for Proof of Damages**

Relator has the burden of proving damages for his FCA claims by a

preponderance of the evidence.

Sources:          Adapted from 31 U.S.C. § 3731(d);  Jury Instruction No. 45, <u>United States ex rel Bunk v. Bikart Globistics GmbH & Co.</u>, No. 1:02-cv-01168 (E.D. Va. Aug. 1, 2014), ECF No. 1312-3 (Skaistis Decl,. Ex. 6, Doc. No. 580-6); <u>United States ex rel. Harrison v. Westinghouse Savannah River Co.</u>, 352 F.3d 908, 923 (4th Cir. 2003).

**Jury Instruction 33:        Reasonable Certainty Required**

Relator must prove the Government's damages with reasonable certainty. You may award Relator only damages that are not speculative.  Speculative damages are those that might be possible but are remote or based on guess work.

If you find that Relator is entitled to a verdict, you may award only such damages as will reasonably compensate the Government for such injury and damages as you find, from a preponderance of evidence in the case, the Government sustained because of Biogen's conduct.

Relator need not prove the exact amount of damages, but he must show sufficient facts and circumstances to permit you to make a reasonable estimate of the damages.  If Relator fails to do so, then he may not recover.

Source:        Adapted from Jury Instruction No. 46, United States ex rel Bunk v. Bikart Globistics GmbH & Co., No. 1:02-cv-01168 (E.D. Va. Aug. 1, 2014), ECF No. 1312-3 (Skaistis Decl,. Ex. 6, Doc. No. 580-6); United States  v. Killough, 848 F.2d 1523, 1531 (11th Cir. 1988); United States v. Collyer Insulated Wire Co., 94 F. Supp. 493, 499 (D.R.I, 1950).

**Jury Instruction 34:        Measure of Damages**

If you find that Relator has proven by a preponderance of the evidence that the remuneration that was intended as a kickback and paid to healthcare providers did cause those healthcare providers' prescribing as to claims for payment submitted to the Government, the measure of damages is the net amount that the Government Health Insurance Program paid because of the AKS violation above what it would have paid if there had been no such violation.

Thus, if you find that Relator has proven by a preponderance of the evidence that Biogen intended remuneration as a kickback and that the remuneration provided by Biogen caused healthcare providers' prescribing, the measure of damages is the amount that the Government Health Insurance Program paid for Biogen's medications above what it would have paid for other available medications in the absence of the AKS violation.

Sources:        Adapted from Jury Instruction No. 44, United States ex rel Bunk v. Bikart Globistics GmbH & Co., No. 1:02-cv-01168 (E.D. Va. Aug. 1, 2014), ECF No. 1312-3 (Skaistis Decl,. Ex. 6, Doc. No. 580-6); Univ. Health Serv., Inc., 579 U.S. at 187 n.2; U.S. ex rel. Concilio de Salud Integral de Loíza, Inc. v. J.C. Rem., Inc., 962 F.3d 34, 42 (1st Cir. 2020); Com. Contractors, Inc. v. U.S., 154 F.3d 1357, 1372 (Fed. Cir. 1998); United States v. Bornstein, 423 U.S. 303, 316 n.13 (1976); United States ex rel. Wall v. Circle C Const., LLCc (6th Cir. 2016); United States ex rel. Davis v. District of Columbia, 679 F.3d 832, 839–40 (D.C. Cir. 2012).

**Jury Instruction 35:    Number of FCA Violations**

If you find that Relator has proven by a preponderance of the evidence that Biogen violated the FCA, then you must determine the specific number of acts Biogen committed that caused a violation of the FCA for which Relator has proven all elements.  Relator must identify specific acts that caused violations of the FCA.

The number of FCA violations is based only on the conduct of Biogen, not the acts of any other entities.  As such, to determine the number of violations by Biogen, you must focus on Biogen's specific conduct, and not on the conduct of the healthcare providers, pharmacies and States or the number of claims those third parties might have submitted.  For example, if Biogen engaged in one act that caused a healthcare provider to submit ten false claims, then the number of acts would be one, based on the single act of Biogen, not the ten false claims submitted by the healthcare provider.

Here, the specific acts Relator has alleged are payments of kickbacks to healthcare providers through meals, speaker fees and consultant fees.  If you find that Biogen caused the submission of false claims to the Government in violation of the FCA by paying kickbacks to healthcare providers, then you must determine the specific number of kickbacks that Relator has proven by a preponderance of the evidence Biogen paid that caused the submission of false claims to the Government.

Sources:    Adapted from United States v. Bornstein, 423 U.S. 303, 313 (1976); United States ex rel. Hays v. Hoffman, 325 F.3d 982, 993-94 (8th Cir. 2003); United States v. Krizek, 111 F.3d 934, 939–40 (D.C. Cir. 1997); United States ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1157 (2d Cir. 1993); see United States ex rel. Dyer v. Raytheon Co., No. 08-10341-DPW, 2013 WL 5348571, at *32 (D. Mass. Sept. 23, 2013).

**Jury Instruction 36:        State False Claims Act Claims**

As I told you earlier, in addition to the claim brought on behalf of the United States, Relator has brought claims on behalf of certain states.  Some state claims have been dismissed.  The states still involved in this lawsuit are: California, Connecticut, Georgia, Illinois, Massachusetts, New Jersey, New York, North Carolina, Tennessee and Texas.  When I refer to the States, I am referring to these states.

Each of the States has enacted a False Claims Act that is modeled on the federal False Claims Act.  These Acts have provisions very similar or identical to their federal counterpart.  Like the federal False Claims Act, each of the States' False Claims Acts imposes liability for knowingly causing a false or fraudulent claim to be paid by the state government.

Each of the States operates a Medicaid program.  These Medicaid Programs are funded by the federal and state governments.  As you heard during this trial, Medicaid claims are reimbursed in part by the federal government and in part by state governments.  Relator therefore is seeking to hold Biogen liable for the States' portions of any allegedly false or fraudulent claims that were paid for by the States' Medicaid programs.

The AKS that I described for you earlier applies to state Medicaid programs.  Thus, the AKS prohibits providing illegal kickbacks to healthcare providers to induce them to write prescriptions that will be covered by one of the States' Medicaid programs.

If, after following my earlier instructions, you find that Relator has not proven by a preponderance of the evidence that Biogen violated the federal False Claims

86

Act by causing false or fraudulent claims to be submitted to a Government Health

Insurance Program, you should also find that Relator did not prove by a preponderance of

the evidence that Biogen violated the analogous provisions of the False Claims Act of all

of the States.

        If, after following my earlier instructions, you find that Relator has proven

by a preponderance of the evidence that Biogen violated the federal False Claims Act by

causing false or fraudulent claims to be submitted to a Government Health Insurance

Program, you should also find that Biogen violated the analogous provisions of the False

Claims Act of all of the States.

<u>Sources:</u>        Adapted from Cal. Gov't Code § 12651(a); <u>Rothschild v. Tyco Int'l, Inc.</u>, 83 Cal. App. 4th 488, 494 (Cal. Ct. App. 2000) ("[T]he California . . . False Claims Act [was] patterned on a similar federal statutory scheme . . . ."); <u>United States v. Shasta Servs. Inc.</u>, 440 F. Supp. 2d 1108, 1111 (E.D. Cal. 2006); <u>Wilson v. City of Los Angeles</u>, 182 Cal. App. 4th 1396, 1408 (Cal. Ct. App. 2010) ("Because the California False Claims Act is similar to the Federal False Claims Act , we can turn to federal decisions for guidance.") (internal quotations and citations omitted); Conn. Gen. Stat. § 4-275(a); <u>State v. Agadjanian</u>, No. HHDCV176082335S, 2019 WL 7499956, at *1 (Conn. Super. Ct. Dec. 10, 2019) ("These provisions under state law are virtually identical to the corresponding provisions of the federal False Claims Act, 31 U.S.C. §§ 3729 through 3732."); <u>Agadjanian</u>, 2019 WL 7499956, at *6 n.6 (Conn. Super. Ct. Dec. 10, 2019); Ga. Code Ann. § 49-4-168.1(a); <u>Hill v. Bd. of Regents of the Univ. Sys. of Georgia</u>, 351 Ga. App. 455, 459, 829 S.E.2d 193, 198 (2019) ("Although Georgia courts have had very little occasion to address the provisions of the GFMCA, this Court has noted that '[t]he statutory language in the GFMCA . . . mirrors the language in the federal False Claims Act, 31 USC § 3730 (h) [the 'Federal Act'], and courts generally look to federal case law to decide issues under the GFMCA.'") (citations omitted); <u>Murray v. Cmty. Health Sys. Pro. Corp.</u>, 811 S.E.2d 531, 537 (Ga. Ct. App. 2018) ("[Georgia] courts generally look to federal case law to decide issues under the GFMCA."); 740 Ill. Comp. Stat. 175/3(a); <u>Stop Ill. Health Care Fraud, LLC v. Sayeed</u>, No. 12-cv-09306, 2020 WL 6896265, at *6 (N.D. Ill. Nov. 24, 2020) ("Illinois courts interpreting the state law look to interpretations of the similarly

worded federal False Claims Act.") (citations omitted); Hindman v. Ahmad, 2022 IL App. (5th) 200331-U, 11 (Ill. App. Ct. 2022) ("The Illinois False Claims Act mirrors the federal False Claims Act.") (citation omitted); Mass. Gen. Laws ch. 12, § 5B(a); Scannell v. Att'y Gen., 70 Mass. App. Ct. 46, 49 n.4 (2007) ("There is little decisional law interpreting the MFCA, and its legislative history is scant. However, the MFCA was modeled on the similarly worded Federal False Claims Act. . . . Therefore, we look for guidance to cases and treatises interpreting the Federal False Claims Act."); N.J. Stat. Ann. § 2A:32C-3; United States v. Loving Care Agency, Inc., 226 F.Supp.3d 357, 364 (D.N.J. 2016) ("The language in the NJFCA is nearly identical to the federal statute and thus requires the same showings"); N.Y. State Fin. Law § 189(1); State ex rel. Seiden v. Utica First Ins., 96 A.D.3d 67, 71. 943 N.Y.S.2d 36, 39 (2012) ("The NYFCA follows the federal False Claims Act . . . And therefore it is appropriate to look toward federal law when interpreting the New York act.") (citations omitted); Dhaliwal v. Salix Pharms., Ltd., 752 F. App'x. 99, 100 (2d Cir. 2019) ("Our analysis under the FCA [] equally applies to [the] NYFCA claims."); N.C. Gen. Stat. § 1-607(a); United States v. Compassionate Home Care Servs., Inc., No. 7:14-CV-113-D, 2017 WL 1030706, at *1 (E.D.N.C. Mar. 15, 2017) (granting partial summary judgment under federal and NC state FCA); United States ex rel Schneider v. J.P. Morgan Chase Bank, N.A., 224 F. Supp.3d 48, 61 (D.D.C. 2016), aff'd and remanded sub nom. United States ex rel. Schneider v. JPMorgan Chase Bank, Nat'l Ass'n, 878 F.3d 309 (D.C. Cir. 2017) (granting motion to dismiss state law claims where claim rested on same allegedly false allegations as the Federal FCA claim, which had been dismissed); Tenn. Code Ann. § 71-5-182(a); United States v. UT Med. Grp., Inc., No. 2:12-CV-02139-JPM-TMP, 2014 WL 12611244, at *4 n.2 (W.D. Tenn. May 21, 2014) ("The elements of a claim under the TMFCA are 'virtually identical' to those of an FCA claim") (citation omitted); Tex. Hum. Res. Code Ann. § 36.002; Texas v. Caremark, Inc., 584 F.3d 655, 657 (5th Cir. 2009) (characterizing the TMFPA as an "analogous provision[] of state law" to the FCA); Waldmann v. Fulp, 259 F. Supp. 3d 579, 633 (S.D. Tex. 2016) (denying defendants' arguments under the FCA and TMFPA on the same grounds because both are "aimed at fraudulent statements made in connection with claims made to government payors"); United States ex rel. Reynolds v. Planned Parenthood Gulf Coast, No. 9-09-CV-124, 2012 WL 13036270, at *6 (E.D. Tex. Aug. 10, 2012) (finding "[t]he TMFPA contains parallel provisions to the FCA").

**IV.**    **<u>Jury Deliberations</u>**

**Jury Instruction 1:          Selection of Foreperson**

When you retire, you should elect one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in open court.

Source:          4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶ 78.01, Instruction 78-5 (2022).

**Jury Instruction 2:        Duty of Juror**

In order for you to determine the facts, you must rely upon your own recollection of the evidence.  No one may invade your province or functions as jurors. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence.  Nor is what I may have said—or what I may say in these instructions—about a fact evidence.  In this connection, you should bear in mind that a question put to a witness is never evidence, it is only the answer which is evidence.  But you may not consider any answer that I directed you to disregard or that I directed struck from the record.  Do not consider such answers.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the Relator has proven his case.

[I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses.  These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses.]  You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to perform the duty of finding the facts without bias or prejudice to any party.

<u>Source</u>:        Adapted from 4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶ 71.01, Instruction 71-3 (2022).

**Jury Instruction 3:**      **Juror Oath**

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law.  I know that you will do this and reach a just and true verdict.

Source:      4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶ 71.01, Instruction 71-4 (2022).

**Jury Instruction 4:        Jury Duty to Disregard the Court's View**

I have not expressed nor have I intended to intimate any opinion as to which witnesses are or are not worthy of belief, what facts are or are not established, or what inference or inferences should be drawn from the evidence.  If any expression of mine has seemed to indicate an opinion relating to any of these matters, I instruct you to disregard it.  You are, I repeat, the exclusive, sole judges of all of the questions of fact submitted to you and of the credibility of the witnesses.  Your authority, however, is not to be exercised arbitrarily; it must be exercised with sincere judgment, sound discretion, and in accordance with the rules of law which I give you.  In making your determination of the facts in this case, your judgment must be applied only to that which is properly in evidence.  Arguments of counsel are not in evidence, although you may give consideration to those arguments in making up your mind on what inferences to draw from the facts which are in evidence.

From time to time the court has been called upon to pass upon the admissibility of certain evidence, although I have tried to do so, in so far as it was practicable, out of your hearing.  You have no concern with the reasons for any such rulings and you are not to draw any inferences from them.  Whether offered evidence is admissible is purely a question of law in the province of the court and outside the province of the jury.  In admitting evidence to which objection has been made, the court does not determine what weight should be given to such evidence, nor does it pass on the credibility of the evidence.  Of course, you will dismiss from your mind, completely and entirely, any evidence which has been ruled out of the case by the court, and you will

refrain from speculation or conjecture or any guesswork about the nature or effect of any

colloquy between court and counsel held out of your hearing or sight.

Source:        4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶
               71.01, Instruction 71-5 (2022).

**Jury Instruction 5:    Right To See Exhibits and Hear Testimony; Communications with Court**

You are about to go into the jury room and begin your deliberations.  If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room.  If you want any of the testimony read back to you, you may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you possibly can in requesting exhibits or portions of the testimony.

Your requests for exhibits or testimony—in fact any communication with the court—should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

Source:        4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶
                    78.01, Instruction 78-1 (2022).

**Jury Instruction 6:          Duty to Deliberate/Unanimous Verdict**

You will now return to decide the case.  In order to prevail, the Relator must sustain his burden of proof, as I have explained to you, with respect to each element of the complaint.  If you find that the Relator has succeeded, you should return a verdict in his favor.  If you find that the Relator failed to sustain the burden on any element of the claim, you should return a verdict against the Relator.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement.  Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict

Source:          Adapted from 4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶ 78.01, Instruction 78-3 (2022).

**Jury Instruction 7:        Special Verdict Form and Interrogatories**

I have prepared a special verdict form with questions for you to use in recording your decision.  The special verdict form is made up of questions concerning the important issues in this case.  Your answers must reflect the conscientious judgment of each juror.  You should answer every question, except where the verdict form directs you otherwise.

Source:        Adapted from 4 Leonard B. Sand et al., Modern Federal Jury Instructions—Civil ¶ 78.01, Instruction 78-9 (2022).

**Jury Instruction 8:       Return of Verdict Form**

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you should be in agreement with the verdict which is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

<u>Source</u>:         4 Leonard B. Sand et al., <u>Modern Federal Jury Instructions—Civil</u> ¶
                 78.01, Instruction 78-6 (2022).

Dated:          June 8, 2022
                Boston, Massachusetts

                          Respectfully submitted,


                          */s/ Aaron M. Katz*
                          Aaron M. Katz
                          aaron.katz@ropesgray.com
                          ROPES & GRAY LLP
                          Prudential Tower
                          800 Boylston Street
                          Boston, MA 02199-3600
                          (617) 951-7000

                          Evan R. Chesler (admitted *pro hac vice*)
                          Rachel G. Skaistis (admitted *pro hac vice*)
                          Michael P. Addis (admitted *pro hac vice*)
                          CRAVATH, SWAINE & MOORE LLP
                          Worldwide Plaza
                          825 Eighth Avenue
                          New York, New York 10019
                          (212) 474-1000

                          *Counsel for Defendant Biogen Inc.*

CERTIFICATE OF SERVICE

I, Aaron M. Katz, hereby certify that the foregoing document filed through the

ECF system will be sent electronically to the registered participants as identified on the

Notice of Electronic Filing (NEF) on June 8, 2022.

/s/ Aaron M. Katz
Aaron M. Katz